Valentine Voght et al., Respondents, v. The City of Buffalo, Appellant.

The common council of the city of Buffalo, in pursuance of authority given by its charter, passed and caused to be published a resolution giving notice of an intention to order a street to be paved "forty-two feet wide, and directed the city engineer to prepare plans and specifications, and to advertise for sealed proposals. A surface railroad was in operation at the time, having a track in said street. By its charter it was required to keep the surface of the street between the rails in good order and repair. The plans and specifications prepared by the engineer did not include the space between the rails. The advertisement for proposals, while describing the work as being forty-two feet wide,

stated that it was to be done in "accordance with the plans and specifications on file." Upon report of the engineer of proposals received, the common council passed resolutions determining the expense of the improvement and directing the work to be done "in accordance with plans and specifications on file," directing the engineer to contract with the lowest bidder at his bid, and directing the city assessors to assess that sum upon the real estate benefited. The contract, as made, excluded from the work five feet, the space between the rails. That part so excluded was not repaved by the city, and no cost for repaving it was included in the assessment. In an action to set aside assessments upon plaintiffs' property for said improvement, plaintiffs claimed the assessments to be void because the contract was only for the repavement of thirty-seven feet instead of forty-two feet as ordered. *Held*, untenable; that the mention in the resolution authorizing the work of forty-two feet was merely descriptive of the width of the street and not directory as to the amount of the improvement; also, that assuming to the contrary the subsequent ordering of the work in accordance with the plans which omitted the five feet was a ratification and adoption thereof, and this the common council had power to do, as the departure from the original intent was publicly advertised, and there was no possibility of prejudice from fraud or collusion.

Also *held*, that if there was a technical irregularity in the proceedings, plaintiffs, in the absence of evidence showing a substantial injury, were not in a position to complain, and so, could not maintain the action.

It appeared that lands on the north side of the street were assessed a little more than on the south side, because of the fact that the railroad track was on the south half of the street. *Held*, that this was a matter within the judgment and discretion of the assessors, and their determination was conclusive.

The assessors' notice of the completion of the assessment-rolls was required by the city charter to be published in five successive numbers of the official paper. (§ 5, tit. 6, chap. 519, Laws of 1870.) It was published five successive week days, omitting an intervening Sunday edition. The evidence showed that said edition, although numbered consecutively with the week-day issue, was furnished and sold under different terms from that issue. *Held*, that the week-day issue was the official paper called for.

(Submitted May 24, 1892; decided June 7, 1892.)

APPEAL from judgment of the General Term of the Supreme Court in the fifth judicial department, entered upon an order made April 16, 1891, which reversed a judgment in favor of defendant entered upon a decision of the court on trial at Special Term and ordered a new trial.

This was an·action in equity to set aside assessments against plaintiffs' property, imposed for repaving Broadway in the city of Buffalo, and to restrain their enforcement, etc., upon the ground of alleged jurisdictional irregularities in the pro- ceedings by the municipality.

The material facts are stated in the opinion.

*George M. Browne* and *Philip A. Laing* for appellant.   It was not necessary that the resolution of intention should con- tain the plans and specifications for the pavement of the street. (*Emery* v. *S. F. G. Co.*, 28 Cal. 375 ; *Harvey* v. *Hiller*, 47 id. 17.)   The preparation of plans and specifications by the engineer, and the publication of a notice inviting bids, are required by the charter of the city of Buffalo.  (Laws of 1870, chap. 519, § 19.)   No authority was delegated to the engineer in this case.   If the common council had knowledge of the existence of these tracks, then it must be they directed the work done as the plans and specifications provided.   (*Lythe* v. *City of Buffalo*, 48 Hun, 178.)   The plaintiffs have failed to show substantial injury ; their case rests upon a technicality and a possible injury.   They cannot maintain this action. (*People ex rel.* v. *Rochester*, 5 Lans. 11 ; *In re Folsom*, 2 T. & C. 55 ; *Lythe* v. *City of Buffalo*, 48 Hun, 175 ; *Morse* v. *City of Buffalo*, 35 id. 632 ; *In re Mead*, 74 N. Y. 221 ; *In re Kendall*, 85 id. 302 ; *In re M. L. Ins. Co.*, 89 id. 530 ; *People ex rel.* v. *Mayor*, etc., 4 id. 419 ; *Genet* v. *City of Brooklyn*, 99 id. 296 ; *Spencer* v. *Merchant*, 100 id. 585 ; *O'Reily* v. *City of Kingston*, 114 id. 439 ; 89 id. 536.)   The fact that the assessors assessed the property upon one side of the street at a higher rate than upon the other is no ground for setting aside this assessment-roll.   (*Elwood* v. *City of Rochester*, 43 Hun, 102 ; *In re Eager*, 46 N. Y. 100 ; *In re Cruger*, 84 id. 619 ; *People ex rel.* v. *Mayor*, etc., 63 id. 291– 300 ; *Guest* v. *City of Brooklyn*, 69 id. 506 ; 99 id. 296 ; *O'Reily* v. *City of Kingston*, 39 Hun, 288 ; 114 id. 539 ; Cooley on Tax. [2d ed.] 660, 662 ; *People ex rel.* v. *Mayor*,

*etc.,* 4 N. Y. 419; *Spencer* v. *Merchant,* 100 id. 585.) The omission of the assessors' notice of the completion of the assessment-roll from the Sunday number of the "Buffalo Courier" did not vitiate the assessment. The Sunday edition of said paper was not the official paper of the city. (Penal Code, §§ 259, 268, 269, 1359; *Kelly* v. *Carrico,* 47 Mo. 157.)

*Frank R. Perkins* for respondents. The defendant's common council has jurisdiction and authority to cause streets to be "paved and repaved" by proceeding in either of two ways, each specially defined by its charter, and in no other or different way has the common council any jurisdiction to cause such work to be done. (Laws of 1870, chap. 519, §§ 7, 8.) The proceeding was without jurisdiction, and the assessment ordered therein was void. (*Smith* v. *New York,* 10 N. Y. 507; *In re Burmeister,* 56 How. Pr. 416; *In re Garvey,* 77 N. Y. 523; *Zeigler* v. *Flack,* 22 J. & S. 69; *Smith* v. *Newburg,* 77 N. Y. 130; *Ottendorfer* v. *Fortunato,* 24 J. & S. 495; *McDonald* v. *Mayor, etc.,* 68 N. Y. 23–28; *Stuart* v. *Palmer,* 74 id. 183; *City of Hudson* v. *Lambert,* 14 Bush. 24.) Section 8 of chapter 774 of the Laws of 1870, entitled "An act to incorporate the Buffalo East Side Street Railway Company," does not prevent an assessment against the street railway for a repaving when that is done, but it does impose upon that company the expense of keeping the pavement in repair between its tracks. (*People ex rel.* v. *City of Brooklyn,* 65 N. Y. 349; *City of Brooklyn* v. *B. R. R. Co.,* 47 id. 476; *Turner* v. *City of Newburg,* 109 id. 301; *N. Y. S. M. M. P. Co.* v. *Remington,* 109 id. 143; *City of Chicago* v. *Robbins,* 2 Black, 418; 4 Wall. 658; *Gilmore* v. *City of Utica,* 121 N. Y. 561.) The city certainly should have exacted and taken from the East Side Street Railway its just proportion of the expense for the work. And that the common council intended to have done, and it would have been done, if the contract had been made as the common council directed. (Laws of 1870, chap. 519.) The engineer had no right or authority to make the specifications other than for the work described in the

resolution of intention. Any omission or change was without jurisdiction, and rendered the contract void. The contractor could not recover for his work done under such a contract, nor can any assessment be levied to defray the expense of it. (*Smith* v. *City of Buffalo*, 1 Seld. 494; *Smith* v. *City of New York*, 10 N. Y. 504; *McDonald* v. *City of New York*, 68 id. 23; *People* v. *Board of Improvement*, 43 id. 227; *In re Eager*, 41 How. Pr. 111; *People* v. *Vanbert*, 65 Barb. 331; *Greene* v. *Mayor, etc.*, 3 T. & C. 753; *Dickinson* v. *City of Poughkeepsie*, 7 Hun, 1; 75 N. Y. 65; *Hersee* v. *City of Buffalo*, 1 Sheld. 446; *Parr* v. *Vil. of Greenbush*, 72 N. Y. 464.) The assessors pursued a mistaken and erroneous theory in laying the assessments contained in the roll in question. (*Clark* v. *City of Dunkirk*, 12 Hun, 181; 75 N. Y. 612; *Kennedy* v. *City of Troy*, 14 Hun, 308; 77 N. Y. 494; *Longley* v. *City of Hudson*, 4 T. & C. 353; *O'Reilly* v. *City of Kingston*, 39 Hun, 288; *Elwood* v. *City of Rochester*, 43 id. 115; *Hassen* v. *City of Rochester*, 65 N. Y. 516; *Strusburg* v. *City of New York*, 87 id. 453; *Rumsey* v. *City of Buffalo*, 97 id. 115; *In re William and Anthony Streets*, 19 Wend. 678; *Taylor* v. *Taylor*, 43 N. Y. 583, 584; *Gillman* v. *Norton*, 33 How. Pr. 376; *G. S. Bank* v. *Sharer*, 25 Hun, 411; *Jennings* v. *Whittsman*, 2 T. & C. 379; *Grandin* v. *LeRoy*, 2 Paige, 509; *Wiswall* v. *Hall*, 3 id. 316; *Cummings* v. *Rapalje*, 11 id. 602; *Martz* v. *Coos*, 108 N. Y. 507.) The evidence shows the facts to be that the assessors have levied this assessment in the sum of $40,270 for repaving only thirty-seven feet. This is without jurisdiction of the subject-matter, and no irregularity in the proceeding is waived. (*Hassan* v. *City of Rochester*, 67 N. Y. 537.) The assessors' notice of the completion of the roll was not served as the charter requires. (*Lythe* v. *City of Buffalo*, 48 Hun, 180; *Elwood* v. *City of Rochester*, 122 N. Y. 229; *Gilmore* v. *City of Utica*, 121 N. Y. 561; *In re Pennie*, 45 Hun, 395; 108 N. Y. 372, 373; *In re Douglas*, 46 id. 42; *Remsen* v. *Wheeler*, 105 id. 573; *Guest* v. *City of Brooklyn*, 79 id. 624; *Wheeler* v. *Mills*, 40

Barb. 644; *In re Astor*, 50 N. Y. 363; *In re Smith*, 52 id. 528.)

GRAY, J. We think the appeal should be sustained. The irregularities alleged were not of such a nature as to invalididate the municipal proceedings; and, furthermore, it does not appear that the plaintiffs have sustained any substantial injury to their property rights. The absence of these elements is fatal to the plaintiffs' demand for equitable relief.

A review of the proceedings of the municipal officers is necessary to a clear understanding of the situation. The common council of the city was authorized by its charter to repave streets, either upon petition of a majority of the property owners, or upon notice of an intention to order the work. These proceedings were instituted upon the report of a committee of their number, appointed to examine the street in question. A resolution of the common council was then published, which gave notice of an intention "to order Broadway repaved forty-two feet wide with first-class Medina sandstone pavement, from Fillmore parkway easterly," etc., and the engineer was therein directed "to prepare plans and specifications and advertise for sealed proposals to do said work," etc. A corporation known as the "Buffalo Eastside Street Railway Company" was operating at the time a surface railroad in Broadway, under grant of the common council authorizing it to lay its tracks, etc. Its charter provided that the company should keep the surface of the street between the rails, whether paved or unpaved, in good and proper order and repair. Pursuant to the resolution of the common council, the city engineer advertised for sealed bids or proposals for the work, and the advertisement contained a notice that plans, specifications and quantities could be seen at his office, and described the work as being "for repaving Broadway forty-two feet wide with first-class, etc., pavement * * * in accordance with the plans and specifications on file in the engineer's office."

The engineer, thereafter, reported to the common council

several proposals received by him, and, thereupon, that body passed a resolution which determined the amount of expense for the improvement of Broadway "in accordance with plans and specifications on file in the engineer's office," at the sum of $40,270, that being the amount of the lowest bid reported ; and the city assessors were directed to make an assessment of that sum upon the real estate benefited "in proportion to benefits resulting thereto." A resolution was passed at the same session ordering the work done "in accordance with plans and specifications on file, etc."

Subsequently a resolution was passed directing the engineer "to contract with Albert Krause for paving Broadway forty-two feet wide with first-class, etc., pavement, * * * at his bid of $40,270, it being the lowest bid." The contract as made excluded from the work of paving a space of five feet between the rails of the single track, then in operation by the railroad company upon that part of Broadway. Upon the trial it was conceded that "the specifications for the improvement in question, made and filed in the engineer's office, excluded the space between the railway track from the space to be paved, and such space so excluded was not paved by the city, or any cost thereof included in the assessment in question."

The plaintiffs have argued, upon the proofs, that the engineer in making plans and specifications did not obey his instructions, inasmuch as he omitted five feet of the forty-two feet in width mentioned in the resolution of intention, and that he disregarded the direction as to contracting for the work, inasmuch as he contracted for the repavement of thirty-seven feet of Broadway instead of forty-two feet. Hence, they say, the proceedings were without jurisdiction and the assessment, consequently, was void. The resolution authorizing the engineer to contract with Krause for the repavement, standing alone, if its language is read with literal exactness, would call for the repavement of the street in its whole width of forty-two feet. It must, however, be read and interpreted in connection with the proceedings preliminary, and leading up, to its

passage. Those proceedings had their inception in the resolution expressing the intention to repave and referring it to the city engineer to prepare plans, etc., and to advertise for proposals to do the work. Plans were made and public notice was duly given of their being on file and that the work of repavement was to be in accordance with them. The proposals for the work were based upon them and the common council determined, upon their basis and upon the proposals, the expense and the requisite assessment, and resolved to do the work under a contract between the city engineer and the lowest bidder. We think that the mention of the forty-two feet in width of Broadway, in the resolution of intention to repave, was merely descriptive of the width of the street from curb to curb, within which the work was to be done, and that it was not directory as to the amount of repavement to be done. But, assuming the contrary view, then the subsequent ordering of the work to be done in accordance with the engineer's plans, which omitted the five feet between the rails of the car track, was a ratification and an adoption of his plans for the work and was competent. The advertisement of the making and filing of the plans was a notice with which every one interested was chargeable. If a departure from the original intention of the council, it was, nevertheless, publicly notified and with no possibility of prejudice from fraud or collusion. If the common council possessed the power to order a repavement of the street, no reason is apparent why they might not adopt and authorize the plan of the city engineer, which contemplated the exclusion of so much of the surface of the street as was within the car tracks. Whether the exclusion was customary in such cases, as it was found by the trial court, or whether the railroad company was considered to be obligated by its charter to keep that portion of the street surface in order and repair and the city relieved therefrom, is not very material to our determination. Whatever was done by the engineer in carrying out the direction of the common council, with respect to the contract for the work, had reference to a plan as to details and as to quantities for

the work, which was publicly advertised and which provided for a repavement of thirty-seven feet of the street only.

If the correctness of our views in this respect might be doubted, still the plaintiffs are not in any position to complain. The contract was awarded to the lowest bidder upon the plans and specifications, and it was expressly conceded that no cost for paving the excluded five feet of street surface was included in the assessment made. They were without any ground for asserting a grievance. If, technically, they could be deemed to have shown an irregularity in the proceedings of the city officers, the absence of any showing of substantial injury to them, in consequence, was necessarily fatal to their appeal to a court of equity.

The engineer did not, as the General Term opinion suggests, dispense with any essential requirement imposed upon him by the common council.

It was referred to him to prepare the plans and specifications for repaving, and the common council, obviously, must have known what they called for. At any rate, they must be presumed to have known them, when they acted upon the engineer's report by ordering the work at a certain cost and in accordance with his plans. Thus, if there was, as it is argued, a modification or change in the original intention, the ratification and adoption by the common council were equivalent to a previous authorization by them to do the work in that way. In these respects this case differs from cases referred to by the learned General Term, where some essential step, or some prerequisite of notice, was wanting and which invalidated the assessment.

The General Term opinion further stated as a ground for reversal that the assessors adopted an erroneous principle in assessing for benefits. All that appears in the case, to justify the opinion in that respect, is the evidence of a witness who was one of the board of assessors. He stated that the lands on the north side of Broadway were assessed a little more in amount than those on the south side, and gave as one of the reasons which influenced them, that there was no street car

track on the north half of the. street; the railroad company having constructed only one of its authorized .tracks, and that upon the south half of the street. We think there was not an error in the principle of assessment, which would warrant an avoidance of the assessment. The assessors were to assess for benefits, and it was competent for them, in the exercise of their judgment, to adjudge the property on the north side in fact benefited by the improvement to a greater extent than the land on the opposite side of the street. There existing facts for their consideration and for the exercise of a judgment as to amount of benefits, their action in assessing was conclusive.

The further ground for the avoidance of this assessment, advanced by the plaintiffs, that the assessors' notice of the completion of the roll was not published in five successive numbers of the official paper of the city, is untenable. The omission relied upon related to the Sunday edition of the "Buffalo Courier." The finding of the trial judge was that the edition published upon each secular day of the week was the official paper called for by the company's contract. The evidence justified the finding and showed that the Sunday edition, though numbered consecutively with the week-day issue, was furnished and sold under different terms from the week-day edition.

Nothing else in the case, to which our attention is called, warranted a reversal of the Special Term judgment, and our consideration of this case has led us to the conclusion that the order of the General Term should be reversed and that the judgment of the Special Term should be affirmed, with costs.

All concur.

Order reversed and judgment affirmed.