THE PRESIDENT, MANAGERS AND COMPANY OF THE DELAWARE AND HUDSON CANAL COMPANY, Appellant, *v.* THE CITY OF BUFFALO, Respondent.

*Charter of the city of Buffalo — assessment for the dredging of a channel in the Buffalo river — it is not void because of a variance between the location of the channel as stated in a notice of intention by the common council to dredge the channel, and as stated in the resolution directing the execution of the contract, and in the plans and specifications — erroneous statement in the city clerk's certificate that no objections had been made to the assessment — effect upon the assessment of previous improvements in the channel made by an abutting owner — presumption in favor of the assessment.*

A notice of intention published by the common council of the city of Buffalo as required by section 407 of the charter of that city (Laws of 1891, chap. 105) stated that it was the intention of the common council to dredge a channel in the Buffalo river, "the center of said channel to be in center of river," but made no reference to that part of the resolution of the common council, pursuant to which the notice was published, directing the board of public works to prepare plans and specifications, and advertise for sealed proposals for the work. Plans and specifications were, however, prepared in which the center

line of the channel was not equi-distant at every point from the shores of the river, but was the most practical line which could be adopted. The resolution thereafter passed directing the work to be done stated "the center of said channel to be in center of river, in accordance with plans and specifications on file in the chief engineer's office," and the resolution directing the execution of the contract awarded for the work, as well as the contract entered into in pursuance thereof, followed the language of the notice of intention, except that to the latter instrument were added the words "in compliance with the plans and specifications and quantities hereunto annexed, and the profile on file in the office of the Chief Engineer of said Board of Public Works."

In an action brought by a corporation owning land opposite the improvement to set aside an assessment levied upon it therefor, it was

*Held,* that, considering the tortuous character of the river and the sharp indentations of the shore line, the fact that it greatly varied in width, and the character of the work, it could not be held that the notice of intention was not in substantial compliance with the requirements of the charter, or that there was such a variance between the notice and the plans and specifications, according to which the work was done, as to render an assessment upon property benefited by the improvement void, especially as it did not appear that the plaintiff had been misled, or had sustained any injury by reason of the discrepancy between the notice of intention and the plans and specifications according to which the channel was constructed;

That an erroneous statement in the city clerk's certificate attached to the assessment roll to the effect that no objections had been filed thereto, whereas the plaintiff had filed objections, in support of which no one appeared, afforded the plaintiff no ground of complaint, it not appearing that the plaintiff was prejudiced thereby;

That the objection that it did not appear whether the mayor approved the action of the common council in confirming the roll or whether the roll was confirmed by lapse of time without action of the mayor, was untenable, as it was incumbent upon the plaintiff, if such omission was material, to establish the same;

That the presumption was that the board of assessors in levying the assessment for the improvement proceeded according to law and acted in a fair, just and equitable manner;

That the fact that, prior to the making of the improvement, the plaintiff had, at its own expense, dredged a channel opposite its premises suitable and adequate for all its purposes, and that a portion of such channel had been utilized in making the improvement, did not prevent an assessment being levied on the plaintiff, provided the assessment only represented the benefits resulting to its property by reason of the improvement as a whole, and was made in the same proportion as the assessment upon the other property benefited;

That the assessment of property upon the side of the river upon which the plaintiff's land was situated at a higher rate per front foot than the property on the opposite side, did not of itself establish that the basis adopted by the assessors was erroneous.

APPEAL by the plaintiff, The President, Managers and Company of the Delaware and Hudson Canal Company, from a judgment of the Supreme Court in favor of the defendant, entered in the office of the clerk of the county of Erie on the 19th day of July, 1897, upon the decision of the court, rendered after a trial at the Erie Special Term, dismissing the plaintiff's complaint upon the merits.

The action was commenced on the 2d day of December, 1895, to set aside and annul a local assessment levied by the defendant upon the property of the plaintiff, for dredging a section of the Buffalo river adjacent to its property in the city of Buffalo, N. Y.

The plaintiff alleges two grounds of complaint against the defendant, upon which it bases its right to recover in this action :

*First.* That the proceedings taken and instituted by the defendant in authorizing and contracting for the completion of the improvement in question, and in levying a portion of the cost thereof upon the property of the plaintiff, were not in compliance with the requirements of the charter of the defendant, but were irregular, illegal and void.

*Second.* That the amount assessed upon plaintiff's property was excessive, was in excess of the benefits, was inequitable and was not made upon a fair, legal or proper basis, and, therefore, does not constitute a valid assessment upon the plaintiff's property.

*George L. Lewis*, for the appellant.

*W. H. Cuddeback*, for the respondent.

McLENNAN, J. :

The Buffalo river flows in a northwesterly direction in the city of Buffalo for a considerable distance, and empties into Lake Erie. In its natural state the river was tortuous, and varied greatly in width between its shore lines, which were irregular. The natural channel of the river was also tortuous, and did not follow the center line of the stream. At the place where the improvement in question was made, when the river was in its natural condition, the water in the channel was shallow, being not more than seven or eight feet in depth, and the bottom was composed entirely of rock, extending from shore to shore. Prior to making any of the improvements hereinafter referred to, the river was navigable for steamers or lake

craft, drawing 19 feet of water, from Lake Erie easterly to a point 400 feet south of Aurora street in the city of Buffalo, a distance from the lake of about two miles, and the channel was at least 140 feet wide, but whether such channel so existed naturally, or was made by artificial means, does not clearly appear, and it is not important to inquire.

Early in the year 1893, under the authority conferred by its charter, the defendant entered upon the project of making a channel in said river 140 feet wide, with a depth of water of 19 feet at low-water mark, extending from the point 400 feet south of Aurora street easterly to the east line of Hamburg street, a distance of about 2,300 feet. Such improvement required the removal of a large amount of rock from the bottom of the river, the estimated cost of which was $185,809.58, and the defendant determined, in the manner hereinafter stated, to assess one-half of such sum, viz., $92,904.79, upon the property benefited by such improvement and according to such benefits.

The first piece of property located on the northerly side of the river, next easterly of the point where such improvement commenced, is owned by the New York, Lake Erie and Western Railway Company, and has a frontage upon the river of 400 feet, and a depth of from 238 to 245 feet. The property next east on the northerly side of the river is owned by the plaintiff, and has a frontage on the river of 1,840 feet — the first 1,390 feet of which has a depth of from 207 to 183 feet, and the balance of its property, viz., 450 feet, has a depth of from 134 to 31½ feet. The property located next east of plaintiff's property, on the northerly side of the river, is owned by the Union Iron Company, and has a frontage of 130 feet, and extends to the easterly line of the improvement, and has a depth of 31½ feet, and is irregular in shape. The property upon the southerly side of the river, opposite the improvement in question, is owned by various persons, and, so far as appears, is all of ample depth, and is so located with reference to the river as to make it suitable and valuable for docking purposes.

Before the defendant assumed to take any action towards making the improvement in question, the plaintiff had caused a channel to be dredged in front of its property for its entire length, about 90 feet in width, and for the first 600 or 800 feet of frontage such

channel was of sufficient depth to give 17 or 18 feet of water at low-water mark, and for the balance of the distance it was of such depth as to give 15 or 16 feet of water. Such channel extended westerly past the 400 feet of property owned by the Erie Railway Company, and connected with the main channel below leading to the lake. The cost of making such channel in front of its premises was borne entirely by the plaintiff, and amounted to between $50,000 and $100,000.,

At the time the work in question was inaugurated and the assessment in question levied, all of the plaintiff's property was improved. Substantial docks had been constructed upon its entire river front, and extended to the channel which it had made. At that time the plaintiff's property was so located, and in such condition of improvement, that the land was assessed for the purposes of general taxation at the rate of about $200 per front foot, or at $337,500 for the entire land. The improvements upon the land were assessed at $50,000, making the total assessment $387,500. The 400 feet owned by the Erie Railway Company and located just west of the plaintiff's property, was also docked and improved. Its assessed valuation does not appear. The property to the east of plaintiff's premises on the north side of the river, which was owned by the Union Iron Company, had no docks and was substantially unimproved. The same was true of the property on the southerly side of the river opposite the improvement in question, and, so far as appears, it was assessed for the purposes of general taxation at only $25 per front foot. The property lying further up the river and easterly of the improvement was substantially unimproved, had no docks, and there was no channel which afforded it any shipping facilities. The evidence indicates, however, that at little cost, compared with the expense of dredging the channel to the west, such property can be made available for dock purposes, as the bottom of the river at that point can be easily dredged.

Such being the condition of the river and the situation of the property fronting upon it, adjacent to the proposed improvement and easterly of such improvement, the defendant, in January, 1893, assuming to act pursuant to the provisions of its charter, being chapter 105 of the Laws of 1891, undertook to make the improve-

ment in question. By section 405 of said act the defendant was authorized to " widen, straighten, enlarge, clear from obstruction, dredge, deepen and put and maintain in navigable condition the Buffalo river * * * and defray the expense or any part of it out of the general fund or by local assessment."

Section 145 of the act provides : " The board (of assessors) shall assess the whole amount ordered to be assessed upon the parcels of land benefited by the work, act or improvement, in proportion to such benefit, except in those cases in which, by this act, the assessment is to be made upon a different principle, and in those cases it shall make the assessment upon the principle prescribed in each case by this act."

It is not contended that any other principle was prescribed by the charter applicable to the assessment of the cost of the improvement in question, and, therefore, in order to sustain the assessment complained of, it must appear that it was made in accordance with the provisions of the section above quoted, namely, the amount of the assessment must be levied upon the property benefited, in proportion to the benefit which resulted to each piece of property respectively.

Section 407 of said act provides as follows : " No work or improvement specified in this act, except those mentioned in section three hundred and ninety-seven, the expense of which shall be estimated to exceed five hundred dollars, shall be ordered unless by the vote of two-thirds of all the members elected to each board composing the common council, after publication in six successive numbers of the official paper, and in one other daily paper of the city, of the intention to order such work or improvement."

Pursuant to the authority conferred by section 405 of said act, the defendant by its common council, on the 16th day of January, 1893, adopted the following resolution : " That the common council of the city of Buffalo intend to order Buffalo River dredged so as to create a depth of 19 feet of water below low-water mark, from a point 400 feet south of Aurora street to the east line of Hamburg street, in a channel 140 feet wide, except through a bridge at Ohio street, where width shall be that of the draws, the center of said channel to be in the center of the river ; and the board of public Works is hereby directed to prepare plans and specifications and

advertise for sealed proposals to do said work, and that the city clerk is hereby directed to cause this notice of such intention to be duly published."

By section 404 Buffalo river within the city is declared to be a public highway.

Section 272 of the act provides as follows : " When any work or improvement, general or local, prescribed in this title is necessary or advisable, the board (of public works) may recommend the same to the common council, with or without plans, specifications and descriptions. The common council may thereupon order the work done, or may order that plans, specifications and descriptions shall be furnished, with or without estimates of costs or bids from responsible parties. * * * The common council may order any work or improvement, either with or without the recommendation of the board of public works, but when such work or improvement is ordered in accordance with plans, specifications or descriptions, a contract therefor shall be made by the board, except where it is authorized to do the work itself."

Pursuant to the resolution of January 16, 1893, the clerk of the city of Buffalo caused the following notice of intention to be published : " That the common council of the city of Buffalo intend to order Buffalo river dredged so as to create a depth of 19 feet of water below low-water mark, from a point 400 feet south of Aurora street to the east line of Hamburg street, in a channel 140 feet wide, except through a bridge at Ohio street, where width shall be that of the draws, the center of said channel to be in center of river."

It will be observed that the notice as published omits that part of the resolution passed by the common council which directs the board of public works to prepare plans and specifications and advertise for sealed proposals to do said work. It appears, however, that the board of public works prepared plans and specifications of the contemplated work and they were filed in the office of the chief engineer of the defendant in accordance with the provisions of the charter. By the plans and specifications so made and filed, and in accordance with which the improvement in question was made, the center line of the new channel did not follow a line equidistant from the shores of the river, but it appears that the most practical

line was adopted as the center of the channel. By the construction of the channel with the center line as shown by the plans and specifications sharp curves and angles were avoided.

The channel, as shown by the plans and specifications and as constructed, utilizes about 60 feet of the channel formerly dredged by the plaintiff, leaving 30 feet of such channel next its property unused and untouched by the defendant, and it was the intention of the defendant that at least 30 feet on the south side of the 140-foot channel made by it should be excavated by the property owners upon that side of the river, thus making a channel in front of plaintiff's property 170 feet wide when the work undertaken by the defendant was completed, and when completed by the property owners on the south side as intended by the defendant, a channel 200 feet wide.

In pursuance of the resolution passed January 16, 1893, and after the plans and specifications had been filed in the chief engineer's office, the board of public works reported that the lowest bid for doing the work was made by McNaughton & Bapst, being two dollars and forty-seven cents per cubic yard for rock and twenty-four cents per cubic yard for earth.

Thereafter, and on the 10th day of April, 1893, the common council of the defendant passed the following resolution : " It is hereby ordered that the Buffalo River be dredged so as to create a depth of 19 feet of water below low-water mark, from a point 400 feet south of Aurora street to the east line of Hamburg street, in a channel 140 feet wide, except through a bridge at Ohio street, where width shall be that of the draws, the center of said channel to be in center of river, in accordance with plans and specifications on file in the chief engineer's office.

" That the amount to be assessed for the improvement of dredging Buffalo River, so as to create a depth of 19 feet of water below low-water mark, from a point 400 feet south of Aurora street to the east line of Hamburg street, in a channel 140 feet wide, except through the bridge at Ohio street, where width shall be that of the draws, the center of said channel to be in the center of river, be and is hereby determined to be ninety-two thousand nine hundred and four and 79/100 dollars; and that the City Assessors be and they are hereby directed to make an assessment of the said sum of $92,904.79

upon the real estate of the city of Buffalo benefited by such improvement in proportion to the benefits resulting thereto."

By such resolution the common council adopted the plans and specifications made and filed by the board of public works, and in accordance with which the improvement in question was made. (*Voght* v. *City of Buffalo*, 133 N. Y. 463.) It will be observed that by said resolution the center line of the channel is described as being in the center of the river *according to such plans and specifications.*

Pursuant to such last-mentioned resolution the board of assessors of the defendant made an assessment roll by which one-half of the cost of the work was levied upon the property benefited. Such assessment was set aside, the plaintiff, among others, objecting thereto, and it. was referred back to the board of assessors by the common council in accordance with the provisions of the charter, and the board of assessors made a new assessment which assessment roll is the one in controversy here.

After such assessment had been made the common council of the defendant, by resolution, directed the board of public works to enter into a contract with McNaughton & Bapst for doing the work in question, which resolution is as follows: "The Board of Public Works are hereby directed to contract with McNaughton & Bapst for dredging the Buffalo River, so as to create a depth of 19 feet of water below low-water mark, from a point 400 feet south of Aurora street to the east line of Hamburg street, in a channel 140 feet wide, except through a bridge at Ohio street, where width shall be that of the draws, the center of said channel to be center of river, at their bid for removing rock, $2.47 per cubic yard; for removing earth, 24 cents per cubic yard; the total cost thereof not to exceed the sum of $185,809.58."

The second roll made by the board of assessors, and the one in question, was objected to by the plaintiff. Its objections were duly heard by the board and were overruled. Thereafter, and on the 31st day of December, 1894, the board of public works entered into a contract with McNaughton & Bapst by which they undertook to do the work specified in the original notice of intention and in the words of said notice, except that in said contract there was added, "in compliance with the plans and specifications and quantities

hereunto annexed, and the profile on file in the office of the Chief Engineer of said Board of Public Works," adding substantially the part of the original resolution which was omitted by the clerk in the notice of intention published.

Sufficient of the proceedings have now been referred to to present the first question raised by this appeal, to wit, that the notice of intention did not comply with the provisions of the charter, and was not sufficient to confer jurisdiction.

As before seen, the plans and specifications as prepared and filed in the chief engineer's office, and as adopted by the common council in ordering the work done and directing a contract to be entered into therefor, do not show the center line of the proposed channel to be in the center line of the river at all places, measured from shore line to shore line, and the center line of the channel as completed by the defendant is not the center line of the river. The plaintiff insists that by reason of that fact the proceedings were fatally defective.

Considering the tortuous character of the river, the sharp indentation of the shore line at many places, especially upon the south side, the fact that it varied greatly in width, and the character of the work and the purpose of the improvement, it cannot be held that the notice as published was not in substantial compliance with the requirements of the charter, or that there was such a variance between the notice and the plans and specifications according to which the work was done, as to render the assessment void.

The purpose of the notice was to apprise all interested parties of the general character of the proposed improvement. It was substantially impossible to give definite and precise information as to the details of the contemplated improvement by means of the notice of intention, and it was not intended to do so. If the description in the notice had been strictly followed, the center line of the new channel would have been as crooked and irregular as the shore line upon either side, and the improvement would be substantially useless and much more expensive. The notice and the plans and specifications clearly indicate that it was the purpose to locate the channel substantially in the center of the river, only varying therefrom when made necessary by the natural conditions which existed.

There is no force in the claim that, by the notice published, the

plaintiff, or any one else, was led to believe that it was proposed to construct a channel, the center line of which was exactly described in such notice. If definite information was desired, it was easy of access. The interested parties knew, or are presumed to have known, that, under the charter of the defendant, plans and specifications of the proposed work were made, and were on file in the office of the chief engineer, and that the improvement would be made in accordance therewith.

Considering the evidence and all the circumstances in this case, it is considered that the center line of the new channel was substantially in the center of the river.

As before said, the notice of intention did not indicate to any interested party, and was not intended to convey the impression, that the center line of the new channel was to be equidistant from the shore lines of the river at every point, but even if thus strictly construed, we think that, under the rule laid down in the case of *Voght* v. *City of Buffalo* (133 N. Y. 463), the plaintiff in this case cannot complain. In that case the common council of the city of Buffalo passed and caused to be published a resolution giving notice of an intention to pave a street forty-two feet wide, and directed the city engineer to prepare plans and specifications and to advertise for sealed proposals for doing the work. The notice or advertisement for proposals, while describing the work as being forty-two feet wide, stated that it was to be done in accordance with the plans and specifications on file. Upon the report of the engineer, and in accordance with the plans and specifications, the contract was let for paving five feet less in the street than was specified in the notice. It was claimed that the assessment was void, because the contract was only for thirty-seven feet instead of forty-two feet. It was held that the mention in the resolution authorizing the work of forty-two feet was merely descriptive of the width of the street, and not directory as to the amount of improvement, and also that, assuming the contrary, the subsequent ordering of the work in accordance with the plans which omitted the five feet was a ratification and adoption thereof, and that this the common council had power to do, as the departure from the original intent was publicly advertised, and there was no possibility of prejudice from fraud or collusion.

It was further held in that case that, even if a technical irregularity occurred, " plaintiffs, in the absence of evidence showing a substantial injury, were not in a position to complain, and so could not maintain the action."

In this case the evidence fails to show that the plaintiff sustained any injury by reason of the discrepancy between the notice and the plans and specifications according to which the channel was constructed.

It is concluded that the notice of intention was regular, gave the defendant jurisdiction ; that the plaintiff was not misled by reason of the variance in the description of the work contained in the notice, and that specified in the plans and specifications in accordance with which the work was actually done, and that, in no event, did any harm or injury result to the plaintiff on account of such variance.

The next objection taken by the plaintiff as to the proceedings of the defendant, is that the city clerk did not present the assessment roll, with the objections thereto, to the common council, as required by the charter. The final assessment roll was filed with the city clerk on the 23d day of October, 1894. The city clerk gave notice of such filing and, in substance, that if no objections to the assessment were filed with the city clerk, such roll would be deemed confirmed, without further action on the part of the common council ; but that, if objections were filed, then the roll with the objections thereto would be submitted to the council at the first regular meeting thereafter. The plaintiff did file objections to such assessment roll on the 2d day of November, 1894, and on the 12th day of November, 1894, the city clerk laid the roll and the objections before the common council. No person appearing in support of the objections the roll was confirmed. The city clerk next delivered the roll to the comptroller, with proof of publication of the required notice, and certified that the roll had been confirmed, but his certificate was erroneous in that it stated no objections had been filed to the roll.

We do not perceive how the plaintiff was prejudiced by the fact that the city clerk omitted to state, in his certificate, that the plaintiff had made objections to the roll.

The objection made by the plaintiff, that it does not appear

whether the mayor approved the action of the common council in confirming the roll, or whether the roll was confirmed by lapse of time without action by the mayor, is not well taken. If such omission were material, the plaintiff was called upon to establish the truth of the proposition. The facts are not such as to warrant the assumption that such irregularity took place, in the face of the well-recognized principle that public officers are presumed to have performed their duty unless the contrary is shown.

The only remaining and the most serious question presented by this appeal, is whether the assessment levied upon the property of the plaintiff is excessive, in excess of the benefits, is inequitable and made upon an illegal or erroneous basis.

It must be conceded that, under the power delegated to the defendant by the Legislature, it had authority to authorize the work in question, to assess one-half the cost thereof upon the property benefited, and that the wisdom of such action is not subject to review

In the case of *People ex rel. Griffin* v. *Mayor, etc., of Brooklyn* (4 N. Y. 419) it was held : " A statute which authorizes a municipal corporation to grade and improve streets, and to assess the expense among the owners and occupants of lands benefited by the improvement, in proportion to the amount of such benefit, is a constitutional and valid law."

In the case of *Litchfield* v. *Vernon* (41 N. Y. 123) it was held : "It is within the power of the Legislature to impose a tax upon a locality, for any purpose deemed by it proper, and this power is not restricted by the Constitution."

Dillon, in his work on Municipal Corporations (4th ed., § 761, subd. 4) says : " When not restrained by the Constitution of the particular State, the Legislature has a discretion commensurate with the broad domain of legislative power, in making provisions for ascertaining what property is specially benefited, and how the benefits shall be apportioned."

A municipality has the power to levy the cost of a public improvement upon all the property specially benefited thereby, according to the exceptional benefit each lot or parcel of property actually and separately receives. (Dillon Mun. Corp. § 761, subd. 5, and cases cited.)

The defendant, by the resolution of April 10, 1893, directed its assessors to make " an assessment of one-half of the entire cost of the work upon the real estate of the city of Buffalo benefited by such improvement, in proportion to the benefits resulting thereto."

By the express provisions of the defendant's charter (§ 145) the board of assessors could not make a legal or valid assessment of one-half of the cost of the improvement in question, except by following the direction contained in the foregoing resolution.   It is immaterial what basis was adopted or what method was employed for the purpose of reaching a determination.   Unless the result was that the assessment levied upon the several pieces of real estate benefited by the improvement was in proportion to the benefits resulting to such pieces of property respectively, such assessment was void.   The value, the superficial area or the frontage of property benefited by a local improvement may be adopted as a basis or method of calculating and ascertaining what part of the cost of such improvement should be levied upon the several pieces of property, but neither method will satisfy the requirements of the statute unless the amount so levied is in proportion to the benefits.   It only remains to inquire whether the board of assessors of the defendant complied with the direction contained in the resolution of April 10, 1893, above quoted.   If they did, they performed their full duty.

It is not doubted that if the board of assessors levied the assessment upon the plaintiff's property upon an erroneous or illegal basis, or made an assessment which was inequitable, and the plaintiff sustained injury thereby, it is entitled to relief.   The presumption of law, however, is that the board of assessors proceeded according to law, and that the assessment was levied in a fair, just and equitable manner.

Only one of the assessors was called as a witness.   He states that the matter of making the assessment in question came up before the board, and was the subject of discussion ; that the members of the board, for the purpose of ascertaining the facts, went to the river and examined the plaintiff's property upon the river in the vicinity of the improvement proposed ; that they crossed the river back and forth, took soundings of the depth of water where the excavations were to be made ; that after such examination there were several

hearings before the board of interested parties, and after such hearings and after such investigation, the assessment in question was made.

The witness further says that he took into consideration the shore line of the property on the north side of the river, and that the channel would be 140 feet in width, exclusive of the 30 feet on each side which was dredged, or was to be dredged, by the property owners; took into consideration the fact that the shore line on the south side of the river would be from 50 to 125 feet from the channel, and that the bottom, for that entire width, was rock, which came very near the surface of the water.

The witness further adds: " We took into consideration the fact that the property on the north side was getting a channel of 140 feet straightaway, and that when the channel was completed the owners of the property on the north side of the river could avail themselves of those benefits at once. To get the benefits on the south side it would be necessary to take out so much more rock before they could get dockage to the shore; before they could get any benefit from these improvements."

A considerable portion of the testimony of the witness does not aid very much in determining the real considerations which actuated him in making the assessment in question, and whether he attempted to give the considerations which influenced him individually, or those which he supposed controlled the action of the board, does not appear. No other member of the board of assessors was called, and little can be learned from the evidence as to what influenced the action of the board, except what may be gathered from the result of its action.

The 400 feet of property owned by the Erie Railway Company, which has a depth of from 245 to 238 feet, was assessed at $4,800, and a computation shows that to be exactly $12 per front foot.

The first 1,390 feet of the plaintiff's property, which has a depth of from 207 to 183 feet, was assessed at $16,488, and by computation it appears that that is at the rate of $11.86 per front foot. The remaining 400 feet of the plaintiff's property, which has a depth of from 134 feet to 31½ feet, was assessed at $5,232, which is at the rate of $11.62 per front foot.

The property next east, owned by the Union Iron Company,

which was a narrow, irregular strip of land, and being only 31½ feet in depth, was assessed at $360, which is $2.76 per front foot.

The several pieces of property on the south side of the river, opposite the improvement in question, were assessed for such sums, respectively. that the rate per front foot is eight dollars; and the pieces of property lying wholly east of the improvement, none of which were accessible from the channel made, were assessed at such sums, respectively, as made the rate from three dollars to three dollars and fifty cents per front foot.

As appears by the assessment roll, the property was not assessed according to its frontage, notwithstanding from such assessment roll it may be ascertained what the rate per front foot was. It is quite apparent that the board of assessors took into consideration the frontage, and used the number of front feet of each piece of property to aid them in determining what amount should be placed upon it, but from that circumstance it cannot be said that the assessment was not made according to benefits. There is nothing to indicate that the board of assessors did not act in entire good faith, and with the honest purpose and intention to levy the assessment fairly and equitably upon the respective pieces of property. If it could be shown that the property of the plaintiff and the property upon the southerly side of the river was actually benefited in the ratio of eight to eleven eighty-six, and that the assessment of all the other property was in exact ratio to the benefits received, certainly no complaint could be made.

It is evident that, under the circumstances of this case, no such actual demonstration could be made, no matter what method was adopted by the board. Much must necessarily be left to the judgment and discretion of the assessors.

It is insisted on behalf of the plaintiff that no part of the cost of the improvement in question should be assessed upon its property, because it already had a channel opposite its premises suitable and adequate for all its purposes.

We think such fact was not necessarily controlling upon the assessors. The defendant had determined, under the power delegated to it by the Legislature, that the public interests required that there should be a channel in the river at the place in question much wider than the one provided by the plaintiff. If a municipal-

ity is authorized to widen a street, and to assess the cost thereof upon the abutting owners, and proceeds in the manner prescribed by law to accomplish that purpose, such abutting owners cannot be heard to say, for the purpose of avoiding the assessment, that the narrow street was adequate and sufficient for their purposes, and that, considering the present use of the property, the wider street is of no benefit.

The assessors would not have been justified in reducing the plaintiff's assessment by reason of the fact that a portion of the work contemplated by the improvement had already been done by the plaintiff at its expense, provided such assessment only represented the benefits which resulted to the plaintiff's property by reason of the improvement as a whole, and was made in the same proportion as the assessment upon the other property benefited.

If a person owning property abutting upon a public street makes improvements in the street in front of such property, by reason of which a pavement can be much more cheaply and easily laid at such place, and the municipality paves the entire street as a public improvement, such person or property owner cannot be given credit upon an assessment levied for defraying the expense of such improvement on account of the work done by him, else, with equal force, it could be claimed that if the work in front of a particular piece of property embraced within the improvement as a whole were especially expensive, an increased assessment should be levied against such property, although no additional benefits would result.

The fact that the property upon the north side of the river, opposite the improvement in question, was assessed at a higher rate per front foot than the property upon the south side, does not, of itself, establish that the basis adopted by the assessors was erroneous.

In the case of *Voght* v. *City of Buffalo* (133 N. Y. 463) at page 471, the court says: "The General Term opinion further stated, as a ground for reversal, that the assessors adopted an erroneous principle in assessing for benefits. All that appears in the case to justify the opinion in that respect is the evidence of a witness who was one of the board of assessors. He stated that the lands on the north side of Broadway were assessed a little more in amount than those on the south side, and gave as one of the reasons which influenced them, that there was no street car track on the

north half of the street, the railroad company having constructed only one of its authorized tracks, and that upon the south half of the street.  We think there was not an error in the principle of assessment which would warrant an avoidance of the assessment. The assessors were to assess for benefits, and it was competent for them, in the exercise of their judgment, to adjudge the property on the north side in fact benefited by the improvement to a greater extent than the land on the opposite side of the street.  There existing facts for their consideration and for the exercise of a judgment as to amount of benefits, their action in assessing was conclusive."

The same reasoning would apply to the action of the assessors in assessing the one hundred and thirty feet owned by the Union Iron Company at two dollars and seventy-six cents per front foot, because of the fact that it was irregular in shape and only thirty-one and one-half feet in depth.

In the case of *O'Reilley* v. *City of Kingston* (114 N. Y. 439) it was held that it was not erroneous to apportion the cost of the improvement upon a street among the owners of real estate abutting thereon, according to the number of feet owned by each individual, provided, in the judgment of the assessors, each owner was benefited in that proportion.  In that case the court says: "It appears that they (the assessors) reached the conclusion that the tax should be apportioned among the owners of the real estate bordering upon the street, according to the number of feet front owned by each individual.  This is not necessarily an erroneous principle if it was their judgment that each owner was benefited in that proportion.  On the other hand, it may be the most just and equitable of any that could be adopted."

In the case at bar the assessors would not have been justified in assessing the property on the south side of the river the same per front foot as that upon the north side, unless, all things considered, the benefits resulting to such property were substantially equal.

In the case of *Hoffeld* v. *City of Buffalo* (130 N. Y. 387) the assessors, in levying the cost of a public improvement, determined that the amount of benefits was not affected by the improvements on the property in question, and so assessed the cost of the work upon the land, without regard to the value of the buildings, and it was held that such assessment was proper.

The assessors of the defendant were charged with the duty of levying $92,904.79, one-half of the total cost of the improvement in question, upon the property benefited by such improvement, " in proportion to the benefits resulting thereto." As before said, no rule could be adopted which would secure absolutely correct results. The assessors were called upon to exercise their best judgment, and even then only approximately accurate results could be obtained. In assessing the plaintiff's property it was their duty to take into consideration its location, its character, its value, and the fact that a channel about ninety feet wide had been constructed in front of it. In determining the amount that should be assessed upon the property on the south, they were called upon to consider its location, its value, its accessibility to the channel, what amount must necessarily be expended in order to make the improvement available to it, and so with reference to all the other pieces of property. No one of these considerations was necessarily controlling, but from all of them and all the other circumstances the assessors were required, in the exercise of their best judgment, to determine what amount should be levied upon each of the several pieces of property.

Several witnesses were called by the plaintiff, who testified that they were familiar with the property in question, and especially with the plaintiff's property, and they each expressed the opinion that the improvement in question was not a benefit, or any especial benefit, to the plaintiff, and also that with the improvement completed the property on the south side of the river was as valuable, and even more valuable, than the property upon the north side.

It was uncontradicted that the plaintiff, prior to the improvement in question, had a channel in front of its premises only 90 feet wide, and that after such improvement was completed it had a channel 170 feet wide, and that when the property to the south avails itself of the benefits of the improvements there will be a channel 200 feet in width.

We think it cannot be said that such additional width of channel, in a broad sense, was not a benefit and a substantial benefit to the plaintiff's property, notwithstanding the fact that it may be true that, for the purposes to which its property is now put, the channel which it constructed was sufficient.

The learned trial justice heard all the testimony upon this ques-

tion, and the other questions in dispute; he saw the witnesses; the situation of the property was fully described and illustrated by the maps and profiles which were before him. He also had before him the official determination of the board of assessors of the defendant, to the effect that it had assessed the property benefited by the improvement "in proportion to the benefits resulting thereto." After hearing all the testimony, and after considering all the circumstances, the learned trial justice determined and found that the proceedings of the defendant were regular, or at least that any irregularity which may have existed did not cause injury to the plaintiff. He also found and determined that the assessment roll made by the board of assessors, and the assessment levied by it upon the property of the plaintiff, were fair, legal and equitable, and in proportion to the benefits resulting from the improvement to the property, and reached the conclusion that the plaintiff's complaint should be dismissed, with costs.

Upon the evidence in this case it cannot be said that the learned trial justice was in error in reaching the conclusion that the proportion of benefits resulting to the several pieces of property benefited by the improvement was correctly stated by the board of assessors in the assessment roll in question. Upon the evidence the justice was warranted in concluding that the assessors correctly determined that the proportion of benefits resulting to the first 1,390 feet of the plaintiff's property was $16,488, and that the proportion of benefits resulting to the remaining 400 feet was $5,232, and that such determination was reached after taking into consideration the location, the area, the frontage, the fact that it already had a channel of 90 feet in width in front of its property, and all the other circumstances proper to be considered.

It may be assumed, however, that the sum assessed upon the property of the plaintiff, and the sums assessed upon the other pieces of property respectively, do not represent with absolute accuracy the benefits resulting. An absolutely accurate result would be impossible, because it must depend largely upon the judgment of the person or persons making the assessment. It is quite evident that no two persons or two boards would reach precisely the same conclusion as to the benefit resulting to each piece of property on account of the improvement, and yet it was made the duty of the board of

assessors of the defendant to take into consideration all the circumstances and reach a determination. This they did honestly and according to their best judgment, and we cannot say that they proceeded upon a wrong or illegal basis.

While the facts in this case present many novel and interesting questions, we think that this court would not be justified in holding that the findings of the learned trial justice were not supported by evidence, or that any material finding made by him was against the weight of evidence.

It follows that the judgment appealed from should be affirmed, with costs.

All concurred.

Judgment affirmed, with costs.