Robert W. Bascom, J.
By Ordinance No. 12738 of the Common Council of the City of 'Schenectady, on February 27, 1956, authorized and directed the widening and grading to 42 feet of South Ferry Street from State Street to Erie Boulevard, together with the acquisition of necessary lands therefor, the paving of the roadway to the width of 32 feet, and the construction of curbing, sidewalks, and sewers, with the realignment of poles and hydrants, all in accordance with plans and specifications prepared by the City Engineer. Upon completion and acceptance of the work, the expense thereof, including overhead, was, by the ordinance, to be “ apportioned and assessed in proportion to benefits derived”, as follows: sidewalk costs directly to properties benefited on the improved portion of South Ferry Street; sewer construction, curbing, grading, and replacement of existing pavement to be paid by the city at large, and all other costs, including new pavement in excess of existing width, and land acquisition to be charged against a district of assessment described and delineated in the ordinance, the perimeter of which was roughly one and one-half to two blocks northerly, easterly, and westerly of the improved portion of South Ferry Street. The assessments of the costs attributed to said district were to be based on the assessed value of land and improvements therein at the date of the adoption of the ordinance, and were payable in 10 equal annual installments. The authority for such ordinance is found in article III of the charter of the city (L. 1931, ch. 411 as superseded in part by Local Laws, 1947, No. 3 of City of Schenectady).
Following completion of the work, the City Engineer furnished the Assessor the requisite district map, together with itemized cost figures on April 4, 1964, showing a total cost of $323,525.85, including $10,417.05 overhead expense, of which $112,887.24 was chargeable to the city at large, leaving $210,638.61 to be assessed against the properties in the district of assessment. The last stated amount was thereupon appor *136 tioned among such properties by the Assessor, and a notice thereof and of its availability for inspection, was duly published in May, 1964 as required by section 47 of article III of the charter.
The rate of apportionment was determined by the Assessor according to “ zones of influence ” or “ zone benefit schedule ”; that is, so much of the expense as was chargeable to the district was allocated as to any given parcel according to the degree which, in the judgment, opinion, and discretion of the Assessor, it was benefited. The degrees of benefit varied according to proximity to the improvement, with other factors considered, such as traffic flow, ingress and egress, the elimination of aged buildings that were depreciating the area and on which side of an intersecting street the parcel was located. As a result, properties directly fronting the improvement were deemed to to have benefited 100%, those in the next zone 75%, those in the third zone 50%, and so on in diminishing percentages until the properties at the perimeter were rated a 10% benefit.
Petitioners, in these consolidated proceedings, all owners of property within the assessment district, duly filed written objections to the apportionment and assessment on the grounds the said charter had not been complied with, the cost of the improvement had been improperly computed and, as computed, had been improperly allocated. A hearing on these grievances was afforded petitioners on June 10, 1964. Following adjournment of the hearing the Assessor, on April 22, 1965, adhered to his original decision and confirmed the assessments as originally fixed, and certified the same to the appropriate fiscal officer who, in August, 1965, published notice of the apportionment and assessments as confirmed, with the requirement for payment thereof, for the period required by the charter. Thereupon petitioners timely commenced these proceedings (Matter of Mohawk National Bank of Schenectady v. City of Schenectady, 31 A D 2d 874) for a determination that the assessments are void, a direction that they be vacated and canceled, and for other appropriate relief.
The petitions, in addition to urging the objections made at the 1964 hearing thereon, further alleged that the assessments were unconstitutional as violative of the due process clauses of the State and Federal Constitutions; that they were illegal and discriminatory in not being applicable to all properties benefited; that the city officials involved acted in excess of jurisdiction, and made arbitrary and capricious determinations; that the land acquisition costs should have been a general city charge rather than a district charge; that the city was guilty of laches and *137 unreasonable delay in not assessing promptly upon completion of the work, whereby properties had changed hands without notice to purchasers that a tax was thereafter to be assessed, with a resultant failure to take the same into account in adjusting equities on title transfers.
It may well be that an inquisition into some of these latter allegations is precluded by section 165 of the Second Class Cities Law which limits the same to. the grounds specified in the originally filed objections. Nevertheless, the court will consider them on the theory that they are allegations of either the fraud or substantial error referred to in that section and in the two sections immediately preceding it.
Addressing the inquiry first to the question of constitutionality, it may be observed that statutes, such as the City Charter here, authorizing a municipality to improve streets and assess the expense among the owners of land benefited in proportion to amount of benefit, were held to be constitutional well over a century ago (People ex rel. Griffin v. Mayor, etc. of Brooklyn, 4 N. Y. 419; Howell v. City of Buffalo, 37 N. Y. 267). No impediment thereto has since been inserted in our organic law. Such assessments are a valid exercise of the State’s power of taxation. The power to tax implies the power to apportion the tax. The two powers are identical and inseparable. If the legislation gives to property owners notice and a full and complete opportunity for a public hearing upon all the questions involved in assessments for local improvements, as the Charter here does, all constitutional requirements have been met and due process applied (New York Cent. & Hudson Riv. R. R. Co. v. City of Yonkers, 238 N. Y. 165, 174). The ordinance here in question does not run afoul of the Charter, hence neither is obnoxious to constitutional objections.
With reference to alleged Charter violations, petitioners argue the Assessor was derelict in his duty by failing to compute the portions of expense attributable to overhead or to the city at large, or otherwise, as the case might be, but left these computations to the City Engineer. The Charter readily refutes the argument. By section 47 it distinctly imposes the duty on the City Engineer to certify, from his records, to the Assessor the total amount to be assessed, itemized to the extent necessary to give the cost and expense of the work, labor and services performed, and materials furnished, with the incidental costs attending the same. Obviously, the Engineer, under whose direction the work was performed and materials procured, would be the one having first hand information as to these figures, and *138 not the Assessor who had no hand in the work. The same section requires of the Assessor, after receiving the figures from the Engineer, only that he apportion and assess the expenses among the properties intended to be benefited by the improvements “ in proportion to the advantage which each shall be deemed to acquire.” That is precisely what occurred.
Relative to the charge that the assessments failed to cover all properties benefited, it is only necessary to say that no property in the district was exempted, and if any property beyond the ambit thereof was in any way benefited, the line had to be drawn somewhere. The Common Council was the final arbiter on such delineation, and any objections thereto could and should have been promulgated at the public hearing prior to the adoption of the ordinance creating the district. The Council’s decision in this respect is conclusive and not subject to review by the courts in the absence of a showing of fraudulent or arbitrarily discriminative action (Matter of Brewster-Mill Park Realty v. Town Bd. of Town of North Elba, 17 A D 2d 467, 468). No such showing was made.
As to the claim that the land taking expense should have been a general city charge, it may be noted that the record does not disclose whether the improvement was initiated by petition or by the Council sua sponte. If it were the former, the Charter (§ 41, subd. 4) permits the Council, in its discretion, to provide that a certain proportional part of the expense of land acquisition shall be borne by the city at large. If it were the latter, where no petition is required, the Charter (§ 43, subd. 1), with certain exceptions not revealed by the record to be here applicable, directs the whole expense, not otherwise provided for, be assessed upon the property in the district. Consequently, charging the land acquisition expense to the district was not improper.
The contention that the expense chargeable to the district was improperly apportioned and should have been allocated in the proportion that the 1956 assessed value of any given parcel bore to the total assessed value of the district, rather than according to the Assessor’s judgment of graduated benefits and burdens, is also untenable. Had that been the intent of the ordinance there would have been no need for the services of the Assessor, as the City Engineer or the Council, itself, could have performed the simple mathematical computations thus required. The Charter (§ 47) imposes the duty of assessing, other than city charges, according to benefits received. Section 6 of the ordinance contains a similar requirement which must be *139 read in conjunction with that requiring' the assessing of costs to be based on assessed value at the date of adopting the ordinance.
In determining whether the Assessor apportioned properly, there must be kept in mind the rule that the proceedings levying an assessment for the cost of a public improvement are presumed to be regular. In determining benefits derived by this type of improvement and the principle upon which they shall be computed, the Assessor acts judicially (O’Reilley v. City of Kingston, 114 N. Y. 439, 448; New York Cent. & Hudson Riv. R. R. Co. v. City of Yonkers, 238 N. Y. 165, 173, supra), and his determination will not be disturbed unless it is apparent that the principle adopted was incorrect and inequitable (Donovan v. City of Oswego, 90 App. Div. 397, 400). The presumption is that the Assessor proceeded according to law and that the imposts were levied in a fair, just and equitable manner. The burden of overcoming the presumption was on the petitioners (Delaware & Hudson Canal Co. v. City of Buffalo, 39 App. Div. 333, 346). The general rule for determining the amount of benefit is to ascertain the market value of each parcel with the improvement and without it. The excess of the one over the other is the amount of benefit (Ellwood v. City of Rochester, 43 Hun 102, 120, affd. 122 N. Y. 229). From the meager evidence at hand it cannot be said the rule was not properly applied. The record is wholly devoid of market values with or without the improvements, total assessed valuation, assessed value of any given parcel or amount of any assessments. It seems patent that properties in the district abutting thé improved street derived the maximum benefit and enhancement, and those on the perimeter but a modicum. In apportioning by “ zones of influence ” and determining that properties abutting the widened street would have the greatest enhancement of value, and that such values would diminish commensurate with departure from that location, was an apportionment within the rule. That is, the Assessor determined that two given properties having equal values before the improvement, but located in different zones of the district, had unequal valuues after its completion. It was competent for him, in the exercise of his judgment, and given facts for his consideration, to adjudge that properties in one part of the district, in fact, benefited to a greater extent than those in another (Voght v. City of Buffalo, 133 N. Y. 463, 472). The quantum of benefits was a question of fact for his determination, both under the charter and the ordinance. No evidence was adduced to indicate either *140 that Ms judgment or the principle on which he proceeded was erroneous, or that the various properties were enhanced more, or less, than the amount ascribed by Mm, whatever those amounts were. If any error was committed in not making an equitable apportionment, it was an error of judgment on the part of' the Assessor and not a fraud or irregularity in the proceedings (Matter of Eager, 46 N. Y. 100, 109). No mathematical errors of computation were shown. It cannot be said that the apportionment burdened those who were not benefited, or benefited those who were not burdened.
None of the other objections or allegations of impropriety require discussion as there was no evidence to support them.
The motions of respondent to dismiss the petitions, made at the close of the trial, are granted with appropriate exceptions to petitioners.