(52 App. Div. 157.)

### PEOPLE ex rel. BULL et al. v. CITY OF BUFFALO.

(Supreme Court, Appellate Division, Fourth Department. May 22, 1900.)

1. MUNICIPAL CORPORATIONS—REPAVING STREETS—REPAIRS.

Rev. Buffalo City Charter (Laws 1891, c. 105) § 279, provides that paved streets may be repaired, when necessary, if the chief engineer certifies that less than one-third of the carriage way is in condition requiring repairs. Section 275 provides that all repairs of such streets shall be paid.

for from the general city fund. Section 397 provides that the city may repave its streets. Section 400 provides that the expense of repaving shall be defrayed by local assessments. The asphalt surfacing of a street in defendant city was worn out to the extent of about one-half, and the city ordered it to be repaired, but the specifications for the new work author-ized the use of the old concrete base, on which the asphalt surfacing was placed, if it could be used, and much of it was used. *Held*, that a special assessment on the adjoining property owners, to pay therefor, was proper, as it was a repaving, and not a repair.

2. SAME—CONSTITUTIONAL LAW.

Rev. Buffalo City Charter (Laws 1891, c. 105) § 397, authorizing the city, in contracting for repaving a street, to require the contractor to keep it in repair for a number of years, is not unconstitutional as an imposition of the burden of keeping the pavement in repair on the property owners instead of the general fund.

3. SAME.

The repaving of a city street is a local benefit, authorizing assessment of adjoining property to pay the cost thereof.

Appeal from special term, Erie county.

Certiorari, on the relation of Fanny A. Bull and others, against the city of Buffalo, to determine the validity of a special municipal assessment. From an order dismissing the writ, the relators appeal. Affirmed.

Argued before ADAMS, P. J., and McLENNAN, SPRING, WILLIAMS, and LAUGHLIN, JJ.

Benjamin F. Folsom and Henry Adsit Bull, for appellants.
. W. H. Cuddeback, for respondent.

LAUGHLIN, J. This is a proceeding by certiorari, which is authorized by the charter of the city of Buffalo, to determine the validity of a local assessment for repaving or resurfacing Summer street with asphalt. The street was originally paved with genuine Trinidad asphalt in the year 1885, at a cost of $3 per square yard, aggregating $36,219.16, which was defrayed by local assessment. Since that time the pavement has been kept in repair by the original contractor under a five-year guaranty clause, and subsequently by the city at the expense of the general fund.

A complete asphalt pavement, as laid in the city of Buffalo, consists of (1) a curb on each side of the carriage way; (2) a prepared roadbed, firm and solid; (3) a concrete base 6 inches in depth; (4) a binder course $1\frac{1}{2}$ inches in depth; and (5) the asphalt surface, 2 inches in thickness or depth. The ordinary method of repairing an asphalt pavement is to cut out the asphalt down to the concrete base, and insert new asphalt, heating the edges of the old pavement where cut, so that the new asphalt will adhere thereto. In the spring of 1899 the asphalt surface in this street, to the extent of about one-half thereof, was entirely worn out, and the street was apparently in a dangerous condition for public travel. The pavement had been repaired to such an extent that it was deemed impracticable, on account of its condition, to maintain it in a suitable condition for public travel longer by the repair system. Accordingly, on the 20th day of March, 1899, the board of aldermen of the city of Buffalo adopted a resolution of intention "to resurface Summer street," and directed the board of public works to prepare plans and specifications and ad-

vertise for proposals for doing the work. Pursuant to this resolution, plans and specifications for "surfacing Summer street" were prepared in two parts, the one containing specifications applicable in case the street should be repaved with any kind of asphalt or smooth pavement, in the construction of which the existing concrete base could be utilized, and the other containing provisions applicable in the event that the street should be repaved with stone, brick, or any other material in the construction of which said concrete base could not be utilized. In the different provisions of the charter conferring power upon the municipal authorities to improve the public streets, the words "surfacing" and "resurfacing" are not employed. The charter terms are "graded," "regraded," "graveled," "regraveled," "macadamized," "remacadamized," "paved," "repaved," "repair," and "repaired." On account of this irregularity, the board of aldermen, on the 17th day of April, 1899, rescinded the former resolution, and adopted a new notice of intention "to repave Summer street," and directed the board of public works to prepare plans and specifications and advertise for proposals for doing the work with each kind of pavement for laying of which specifications had been filed with the board of public works, and to report its action thereunder. These resolutions were approved by the board of councilmen and the mayor. The board of public works thereupon readopted the specifications which they had previously prepared, making the necessary changes therein to designate the work "repaving" instead of "resurfacing." The work provided for by that part of these specifications, under which the work has been done, consisted in removing the old asphalt for the entire length and width of the street, redressing and resetting the curb, and laying new curbing where required, renewing the old concrete bed wherever soft or broken, removing the concrete bed to the extent of six inches in width along the line of the curb on each side of the carriage way for the entire length of the street, replacing the same with new concrete, and a new binder and wearing surface of asphalt for the entire length and width of the street. The determination of the municipal authorities that this work was necessary was fairly justified by the facts and circumstances. The cost of the work was $1.72 a square yard, making the entire cost $22,071, for which a local assessment roll has been made and confirmed, in and by which the relators, who own lands fronting upon the street so improved, are assessed that part of said entire cost of the improvement which is in proportion to the benefits accruing to their premises therefrom, as determined by the board of assessors pursuant to the provisions of the charter and approved by the common council.

The first question arises on the contention of the appellants that the work is "repairing," not "repaving," and that the expense thereof should be borne by the general fund. Section 279 of the Revised Charter of the City of Buffalo (chapter 105, Laws 1891), which became of force on the first Monday of January, 1892, provides as follows:

"All streets or parts of streets paved at the time this act takes effect, or which shall subsequently be paved, shall be deemed accepted streets within

the meaning of this title, and shall be repaired when necessary if the chief
engineer certifies that less than one-third of the carriage way is in condition
requiring repairs."

By section 275 of said charter it was provided that "all repairs of
accepted streets" should be paid for from the general fund, and sec-
tion 276 required the board of public works to estimate annually,
with its other estimates to the comptroller, the amount necessary
to be expended during the ensuing year for repairs to accepted
streets. Section 277 provides that the board of public works shall·
cause the accepted streets to be repaired without the previous order
of the common council, and shall employ the necessary men and pur-
chase the necessary materials therefor, and certify the expense there-
of to the common council, to the end that a warrant may be drawn
on the treasurer in payment therefor. Section 397 of the charter
provides as follows:

"It [meaning the city] may cause any street or alley to be graded or re-
graded, graveled or regraveled, macadamized or remacadamized, or paved or
repaved. When it is proposed to pave or repave any street or alley, plans and
quantities shall be prepared for doing the same with each kind of pavement
for the laying of which specifications have been filed by the board of public
works. The latter body shall advertise for bids for doing the same in accord-
ance with such plans, specifications and quantities, and report the same to the
common council. After one, and within four calendar months from such re-
port, the common council shall determine which kind of pavement shall be
used, and in case a majority petition shall not have been presented, for the
kind so determined upon, shall pass a resolution of intention to order the street
paved with any kind of pavement it may select. The specifications may pro-
vide that the persons submitting bids or proposals shall agree to enter into
contract to do the work, and to keep and maintain the same in good repair for
a certain definite period, and a contract may be entered into in accordance
therewith, and a local assessment made to defray the expense thereof, any-
thing in this act to the contrary notwithstanding."

Section 396 provides that "it [meaning the city] may cause streets
and alleys to be opened, leveled, repaired, cleaned and watered."
Section 400 of the charter provides that:

"The expense of all the work or improvements mentioned in sections 396
and 397 of this act, except the cleaning of streets and alleys, the cleaning and
repairing of sewers and receivers, the repairing of the accepted streets and
the construction and repair of crosswalks, shall be defrayed by local assess-
ments."

These are the material statutory provisions on the construction of
which the question presented depends. It clearly appears that the
legislature intended that a street, once paved at the expense of the
abutting landowners, should be kept in repair for a time, but not ever
afterwards, by the general fund. Express power was given to re-
pave streets at the expense of the property owners specially benefit-
ed. The question then arises whether the work provided for in these
specifications and actually done constituted "repairing" or "repav-
ing," within the meaning of these provisions of the charter. This
question might be difficult of solution were it not for the fact that
we think the legislature intended by the clause in section 279 of the
charter, hereinbefore quoted, to provide that the work shall be
deemed "repairs" where less than one-third of the carriage way is in
a condition requiring repairs. This we consider the proper construc-

tion of the charter provisions, considered together. The work. is a repavement where more than one-third of the carriage way is in a condition requiring repairs, and in other cases it is to be classified as repair work. In the exercise of this important power, the common council must deal justly with the local taxpayers. A paved street may not be neglected until more than one-third of the carriage way needs repairs, with a view to ordering it repaved. The local authorities are required to make repairs from time to time, when necessary in the interests of the abutting property owners, as well as to relieve the city from liability for accidents. Where the municipal officers have performed this duty in good faith, and the time has arrived when, by reason of disintegration incident to age and wear and tear, from use and the weather, it has become impracticable to longer keep two-thirds of the carriage way in a fair condition for public travel, by the ordinary method of making repairs, then a repavement may be ordered. Such are the facts in the case under consideration, and there is no room for inference or suspicion that the officials have acted otherwise than in perfect good faith.

One of the conditions of the specifications is to the effect that the contractor shall, at his own cost and expense, keep and maintain the pavement in good condition for 10 years. It is conceded that, under the last sentence of section 397 of the charter, this provision of the specifications was authorized; but it is contended that the charter provision authorizing it is unconstitutional, in that it imposes upon the local property owners the expense of keeping the pavement in repair for the period of 10 years. The legislature manifested an intention to have the expense of ordinary repairs required to be made on a paved street borne by the general fund. In order, however, to secure the best results, and to insure the laying of the pavement according to the most approved, scientific principles, and to insure the use of the best material, the legislature has seen fit to clothe the common council with authority to insert this clause in the specifications and contract. It inures to the benefit of the abutting property owners. The legislation complained of is fairly within the constitutional power of the legislature.

Lastly, it is contended by the appellants that a repavement is not a local benefit, and that it was not competent for the legislature to authorize a local assessment therefor. Unlike the constitution of some of the other states, there is no provision in our constitution guarantying that taxation, general or local, shall be equal and uniform. We regard the law as too well settled, in this state at least, in favor of the right of the legislature to authorize the expense of paving and repaving streets to be defrayed by local assessments, to require extended consideration. The abutting property owner, it is true, is not the only one benefited. Other residents and nonresidents of the city who have occasion to use the pavement, and those owning real property in the vicinity, receive some benefit therefrom. But, when the condition of the street renders a new pavement necessary, the abutting property is directly benefited by such new pavement, and the market value thereof is increased in the same manner, if

not to the same extent, as by the original pavement. In re Phillips, 60 N. Y. 21; In re Burke, 62 N. Y. 224; People v. Mayor, etc., of Brooklyn, 4 N. Y. 419–440; Genet v. City of Brooklyn, 99 N. Y. 306, 1 N. E. 777; Spencer v. Merchant, 100 N. Y. 585, 3 N. E. 682; Moran v. City of Troy, 9 Hun, 540; Voght v. City of Buffalo, 133 N. Y. 463, 31 N. E. 340; Markey v. City of Brooklyn, 65 N. Y. 346; In re Sharp, 56 N. Y. 247; Jones v. Town of Tonawanda, 158 N. Y. 438, 53 N. E. 280.

It follows that the decision and order appealed from should be affirmed, with costs. All concur.