New York Central and Hudson River Railroad Company, Respondent, *v.* The City of Yonkers, Appellant. (Actions Nos. 1 and 2.)

Assessment — railroads — Yonkers (city of) — when property of railroad may be assessed for local improvements — when railroad cannot succeed in action in equity to set aside assessments as cloud upon title — jurisdiction of assessors — question of fact as to assessability of railroad property to be determined by assessors — failure of railroad company to appear before assessors or to pursue remedy provided by article 10 of Second Class Cities Law — when all constitutional requirements met and due process of law applied.

1. Although property may be used by a railroad for railroad purposes, nevertheless it may be subject to an assessment for local improvements if it appear that the property may not always be used for railroad purposes and may be increased in value by the improvement. (*Matter of City of New York* [*Juniper Avenue*], 233 N. Y. 387, followed.)

2. Where a railroad company was not only given the legal and usual notice of a proposed local improvement and of the fact that its property was likely to be assessed, but also an opportunity to be heard before the board of assessors, and again before the common council in reference to the assessment as proposed, to which it paid no attention but ignored them and let the machinery of government work to its conclusion, assessing all property owners, including itself, for the benefits resulting, it cannot successfully contend in actions in equity to set aside the assessment as a cloud upon the title of its property, standing simply upon its legal rights, that the assessors were without jurisdiction and the proceedings absolutely void.

3. The assessors having complied with every requisite of the charter for levying the assessments were not without jurisdiction. Whether or not a particular piece of land was benefited by the improvement or whether it constituted a part of defendant's right of way so used as to give evidence of a permanent user for railroad purposes were facts for the assessors to determine, save in the single case where the railroad's right of way is so used that it gives evidence of a permanent user for railroad purposes. The railroad company should have appeared before the assessors and presented the facts and then if dissatisfied appeal according to law from an adverse determination.

4. In any event the plaintiff cannot succeed in these actions even though the assessors were without jurisdiction. The Legislature may not only provide, as it has in the charter of the defendant, the method by which property may be assessed for street openings and local improvements, but it may also provide an exclusive remedy for the review or correction of the assessments so long as the law gives to property owners notice and a full and complete opportunity for a public hearing upon all the questions involved in the taking of their property, or in the assessments for local improvements. If this be done all constitutional requirements have been met and due process of law applied.

5. While it is true that it is an acknowledged head of equity jurisdiction to remove clouds on title, the Legislature has the power to deprive parties of that particular remedy. The Legislature in the " Second Class Cities Law " (Cons. Laws, ch. 53), article 10, has provided a method for the review of assessments where lack of jurisdiction or fraud is claimed. By this act it gave to the plaintiff a full and complete remedy. It knew of the proceedings before the assessors. It had notice of the assessments and an opportunity to be heard as to their correctness. It could have filed objections as required in both notices given by the common council. Within twenty days after the confirmation of the assessments it could have applied to the Supreme Court to set them aside. Having failed to proceed according to the statute it cannot now be heard to complain in a court of equity.

*N. Y. C. & H. R. R. R. Co.* v. *City of Yonkers (Actions Nos. 1 & 2)* 206 App. Div. 709, reversed.

(Submitted April 3, 1924; decided May 13, 1924.)

APPEAL in the first above-entitled action, by permission from a judgment of the Appellate Division of the Supreme Court in the second judicial department, entered May 31, 1923, unanimously affirming a judgment in favor of plaintiff entered upon a decision of the court on trial at Special Term.

Appeal in the second above-entitled action, by permission, from a judgment of the Appellate Division of the Supreme Court in the second judicial department, entered June 1, 1923, unanimously affirming a judgment in favor of plaintiff entered upon a decision of the court on trial at Special Term.

*James Taylor, Corporation Counsel (I. J. Beaudrias* of counsel), for appellant. Plaintiff was bound to appear at the proper time and before the proper tribunal and present any objection to the assessment of its property, otherwise it would be deemed to have waived said objection. (*Matter of City of New York [Juniper Ave.]*, 233 N. Y. 387.) If the assessors erred in determining the lands benefited or the amount of the benefit, plaintiff's remedy was by appeal in accordance with the charter provisions or by certiorari under the Code and not by suit in equity. (*Mansfield v. City of Lockport*, 24 Misc. Rep. 25; *N. Y. & H. R. R. R. Co. v. Morrisania*, 7 Hun, 652; *County of Monroe v. City of Rochester*, 154 N. Y. 570; *Scott v. Onderdonk*, 14 N. Y. 1; *Providence Retreat v. Buffalo*, 29 App. Div. 160; *Hassen v. City of Rochester*, 65 N. Y. 516; 67 N. Y. 528; *Hoffeld v. City of Buffalo*, 130 N. Y. 387; *Matter of Munn*, 49 App. Div. 232; *People ex rel. N. Y., W. & B. R. R. Co. v. Waldorf*, 168 App. Div. 473; 217 N. Y. 96; *Matter of City of New York [East 136th St.]*, 127 App. Div. 672.)

*Joseph W. Bryan* and *John F. Brennan* for respondent. Respondent can maintain this action and a court of equity can grant the relief sought. (*N. Y., N. H. & H. R. R. Co. v. Village of Port Chester*, 149 App. Div. 893; 210 N. Y. 600; *Sanders v. Downs*, 141 N. Y. 422; *Dederer v. Voorhis*, 81 N. Y. 156; *Clark v. Davenport*, 95 N. Y. 477.) The assessment herein is a cloud on respondent's title provable only by evidence outside of the record and this action is maintainable. (*Elmhurst Fire Co. v. City of New York*, 213 N. Y. 87; *Mansfield v. City of Lockport*, 24 Misc. Rep. 25; *County of Monroe v. City of Rochester*, 154 N. Y. 570; *Scott v. Onderdonk*, 14 N. Y. 1; *Providence Retreat v. City of Buffalo*, 29 App. Div. 160; 154 N. Y. 570; *Hassen v. City of Rochester*, 65 N. Y. 516; 67 N. Y. 528; *Hoffeld v. City of Buffalo*, 130 N. Y. 387; *People ex rel. N. Y., W. & B. R. Co. v. Waldorf*, 168

App. Div. 473; *Leonhardt* v. *City of Yonkers*, 195 App. Div. 234; *Moore* v. *City of Yonkers*, 235 Fed. Rep. 485.)

CRANE, J. These actions were brought to cancel, vacate and set aside certain assessments levied against the property of the plaintiff, respondent, for the cost of laying out, opening and improving Alexander street in the city of Yonkers.

In action No. 1 an assessment was made against the plaintiff's land amounting to $24,278.10. In action No. 2 the assessment was $3,204.31. Action No. 1 relates to the laying out and opening of Alexander street from the south line of Ashburton avenue to the south line of Wells avenue in the city of Yonkers. Action No. 2 relates to the regulating, grading, paving and otherwise improving that portion of Alexander street.

I will state first the facts relating to action No. 1.

By order of the board of estimate and apportionment of the city of Yonkers notice was given pursuant to the city charter that a public hearing would be had on September 1st, 1908, at 8 o'clock P. M. in the Manor Hall, Yonkers, New York, on the proposed laying out and opening of Alexander street from the south line of Ashburton avenue to the south line of Wells avenue as set forth in a description of the proposed improvement on file in the office of the city clerk. The notice was duly advertised, and the plan thereafter adopted by the board of estimate without opposition. Later another notice was given, pursuant to the charter, of a public hearing to be held at a meeting of the common council on the 23d day of November, 1908, at 8 o'clock, to hear allegations in regard to the improvement set forth in the proposed ordinance therein contained. This notice was also duly advertised.

At a special meeting of the common council held on November 30, 1908, an ordinance, No. 143, was passed authorizing and directing that Alexander street, a public

street in the city of Yonkers, be extended from Ashburton avenue to the south line of Wells avenue. Section 3 of the ordinance provided:

" When such improvement shall have been completed the whole of the expense thereof shall be apportioned and assessed, according to law, to the end that the same may be confirmed and collected upon the property included within the following boundaries and description, being the property hereby deemed to be benefited thereby, and hereby established as the district of assessment therefor."

Then follows a description which includes the parcels here involved. Upon a certificate of the comptroller it was found that the expense in laying out and opening of this part of Alexander street amounted to $178,805.93, whereupon another notice was given to all parties interested and to the public. This notice was dated September 21, 1912, and was given by the assessors pursuant to law. It read:

" In the Matter of Laying Out, Opening and Extending Alexander Street, from Ashburton Avenue South to Wells Avenue.

" Notice is hereby given that the undersigned, the Assessors of the City of Yonkers, have apportioned the expense of the above named improvement, and have made an assessment roll and completed and deposited the same in their office for inspection by parties interested; and that they will meet to hear the allegations and objections of all persons interested in said assessment at their office, City Hall, on Wednesday, the 2nd day of October, 1912, from 10 to 12 A. M. and from 1 to 4 P. M.

" Dated YONKERS, *Sept.* 21, 1912.

> " ROBERT H. NEVILLE,
> " DANIEL W. CARROLL,
> " FREDERICK D. BREITHACK,
> " JOHN J. LOEHR,
> > *"Assessors."*

This notice was duly advertised. On October 15, 1912, the city clerk, pursuant to the charter, by order of the common council, gave another notice as follows:

" In the Matter of Laying Out and Opening Alexander Street, from Ashburton Avenue to the south line of Wells Avenue.

" Notice is hereby given pursuant to law that the assessment roll in the above matter has been completed and filed in the office of the City Clerk, and that the Common Council will proceed to a consideration of said assessment roll at a meeting thereof to be held on Monday, the 28th day of October, 1912, at 8 o'clock in the evening, and that prior to said 28th day of October, 1912, written objections to such assessment roll, or any part thereof may be filed with the City Clerk.

" Dated, Yonkers, N. Y., *October* 15, 1912.

" By order of the Common Council.

" JOSEPH F. O'BRIEN,<br>" *City Clerk.*"

On December 9, 1912, the common council passed an ordinance confirming the assessment roll and levying and assessing the property in accordance with the terms therein set forth.

The assessment on the plaintiff, respondent's two parcels amounted to $24,278.10.

The facts regarding action No. 2, parcel 12, relate to the regulating, grading and otherwise improving of said Alexander street, from Ashburton avenue to the south line of Wells avenue. The ordinance calling for this was passed by the common council on April 24, 1911. The cost as certified by the comptroller amounted to $26,370.02 to be assessed on the property benefited. Notice was given by the assessors on March 27, 1912, that the assessment roll had been completed and was deposited in their office for inspection, and that they would meet on April 8, 1912, to hear all the allegations and objections

of all persons interested. A further notice was given on April 23, 1912, that the assessments had been filed in the office of the city clerk and that the common council would hold a meeting on Monday, the 13th of May, 1912, at which written objections to such assessment roll or any part thereof may be filed with the city clerk. On May 13, 1912, the assessment roll was confirmed by the common council.

The plaintiff's assessment was $3,204.31.

From a recital of these proceedings it will appear that the plaintiff's property in these two actions, parcels 27 and 38 and parcel 12, were to be assessed for the laying out and improving of Alexander street; its property was included in the area of benefit.

The railroad company was given the legal and usual notice not only of the proposed improvement and of the fact that its property was likely to be assessed, but also an opportunity to be heard before the board of assessors, and again before the common council in reference to the assessment as proposed. The plaintiff, the railroad company, paid no attention whatever to these proceedings. It ignored them. It made no objection before the board of assessors or the common council in either case, and let the machinery of government work to its conclusion, assessing all property owners, including itself, for the benefits resulting from the opening and improving of Alexander street.

Six months after the confirmation of these assessment rolls by the common council of the city of Yonkers, these actions were brought in equity to set aside the assessments as a cloud upon the title of the railroad property. There is nothing in the record to show that the railroad company was in any way prevented from appearing before the city authorities and objecting to the assessments as notified to do at almost every step in the proceedings. No reason is given why the railroad company should have ignored the usual channels through which

such objections are made by property owners. It does not even claim that it did not know about them. It stands in these actions upon its legal rights, claiming that the assessors were without jurisdiction and the proceedings absolutely void. In this we differ with the respondent and the courts below.

It is not all property of a railroad company that is exempt from assessment for local improvements. We have held (*Matter of City of New York* [*Juniper Avenue*], 233 N. Y. 387) that although property may be used by a railroad for railroad purposes, nevertheless, it may be subject to an assessment for local improvements if it appear that the property may not always be used for railroad purposes and may be increased in value by the improvement. In this case we said:

" But in one case, and one only we have said that the opening or widening of a street cannot as a matter of law be of benefit — where a railroad occupies a strip of land for its right of way. (*N. Y., N. H. & H. R. R. Co.* v. *Vil. of Port Chester*; 149 App. Div. 893; affd., 210 N. Y. 600.) Such land is used permanently by the railroad corporation in its operation. As a practical matter it may not be severed from other property and sold. It is a highway devoted to public travel. (*Allegheny City* v. *W. P. R. R. Co.*, 138 Penn. St. 375.) Not because the owner is a railroad corporation was the rule adopted; not because the land is devoted to a public use, but because the public use to which it is devoted is in all probability permanent and is inconsistent with the idea of any benefit from such an improvement as we are here considering. Even so used other improvements might be of advantage to the right of way. It has been said that an assessment for a sewer might properly be imposed upon it. (*Troy & Lansingburgh R. R. Co.* v. *Kane*, 9 Hun, 506; affd., on other grounds, 72 N. Y. 614.) However this may be, we are here dealing with a different question. The land in dispute is used to-day for railroad

yards.  This use it is true is a public one.  The property doubtless might not be condemned for other purposes without express authority conferred by the legislature (*Matter of City of New York*, 226 N. Y. 128), but the use is not of such a character that we can say as a matter of law no benefit could possibly be acquired by the opening of Juniper avenue."  (P. 392.)

The assessors of the city of Yonkers were not without jurisdiction.  Every requisite of the charter for levying these assessments had been complied with.  Whether or not a particular piece of land was benefited by the improvement was a question of fact depending upon evidence.  This evidence was to be produced and introduced before the assessors.  Their determination was in the nature of a judicial proceeding, and their judgment final, except as hereinafter stated.  The assessors may have made a mistake of judgment in determining the amount of benefit and necessarily the amount of assessment, or may have made a mistake in determining that the property was benefited at all.  It was a matter of judgment to be determined by all the facts and circumstances.  There is no statute which exempts the property of a railroad company from assessment for local improvement.  Its yards, terminals or storage plants may be greatly enhanced in value by local improvements. . It is only where the railroad's right-of-way is so used that it gives evidence of a permanent user for railroad purposes that we have held that the railroad cannot be assessed.  These were facts for the assessors to determine.  The railroad company should have appeared before the assessors and presented the facts and then if dissatisfied appealed according to law from an adverse determination.  The action of the assessors may have been erroneous; their conclusion may have been unjustified, but their action did not lack jurisdiction.

The trial justice made findings of fact wherein he stated, " That at every point paralleling or running along

said Alexander street the railroad tracks of the plaintiff were equipped with third rails for electric operation and on the right of way above mentioned were erected electric transmission lines on poles and said right of way was at all the times hereinafter mentioned and now is used exclusively for the operation of electric and steam trains and for railroad purposes."

He does not state, however, what the railroad purposes are. Turning to the evidence to interpret this general finding we find that the passenger platform at the Yonkers station extends on the parcels assessed and for a distance north of Wells avenue of about 150 feet, and there are stairways leading to and from said platform to the street on each side of Wells avenue for the convenience of passengers. Whether this passenger platform will always be used for railroad purposes may be a question of fact. Its value may be greatly increased by additional access to the street.

However this may be, the plaintiff cannot succeed in an action like this even though the assessors were without jurisdiction. The legislature may not only provide as it has in the charter of the city of Yonkers, the method by which property may be assessed for street openings and local improvements, but it may also provide an exclusive remedy for the review or correction of the assessments so long as the law gives to property owners notice and a full and complete opportunity for a public hearing upon all the questions involved in the taking of their property, or in the assessments for local improvements. If this be done all constitutional requirements have been met and due process of law applied.

In *Loomis* v. *City of Little Falls* (176 N. Y. 31) it was said:

" It is true, as the learned counsel for the plaintiff contends, that it is an acknowledged branch of equity jurisdiction to remove clouds from the title to real property, but the legislature has the power to deprive

parties of that particular remedy. It may not deprive them of every remedy, but so long as an adequate remedy is afforded to a party injured the legislature acts within its authority when it deprives the courts of power to give relief in certain forms of actions.  *  *  *

" It is, therefore, settled by authority that it was within the power of the legislature to have provided by section 83 that no action should be brought to cancel, annul or set aside any assessments made for land improvements. But it did not go so far, and instead limited the bringing of such an action to a period of 30 days after the delivery of the assessment roll and warrant to the city treasurer, and notice by him in the official newspapers of the city of receipt thereof, and conditioned further that within such 30 days he procure an injunction restraining the common council from issuing the assessment bonds.

" The reason for requiring the commencement of the action and the granting of an injunction is apparent. The fact that no action has been brought when such a statute exists assures the would-be purchaser of the bonds that he is not in danger of being subjected to litigation in the event of purchase, and hence the bonds are likely to sell at a higher price than when there is some uncertainty about it." (p. 34.)

Again in *Leonhardt* v. *City of Yonkers* (195 App. Div. 234, 239) it was stated:

" Where the Legislature has provided a mode of published notice designating a time and place appointed to present grievances, objections and complaints, which will then be heard and considered, the Legislature may restrict and limit any subsequent resort to judicial proceedings."

In *Moore* v. *City of Yonkers* (235 Fed. Rep. 485) it was claimed that the assessment so substantially exceeded the benefits which accrued to the plaintiff's property that the action of the municipal authorities was unconstitutional and without jurisdiction. The action was

brought in equity to remove the assessments as a cloud upon the title to the appellant's premises. The appellant here also had failed to appear and make any objection to the assessments pursuant to the municipal notices. The court said:

" * * * Where an assessment is confirmed by proceedings in a court, and a judgment is entered to that effect, such judgment is controlled as to its effect and validity by the principles of law applicable to judgments in general. Confirmation is not always by a court, but is sometimes by a common council or other corresponding body, the action of which body is by statute to have the same effect as the judgment of a court. And in such cases the action taken cannot be attacked collaterally if the tribunal had jurisdiction, but is conclusive upon the parties. Page and Jones on Taxation by Assessment, volume 2, par. 927. That the common council of Yonkers had jurisdiction in the matter of this assessment is clearly disclosed.

" In this case it is not contended that the statute under which the assessment was laid is unconstitutional. It provided fully for notice and hearing, and it is immaterial that such hearing was to be had before the tribunal laid the assessment. *Fallbrook Irrigation District* v. *Bradley,* 164 U. S. 112, 17 Sup. Ct. 56, 41 L. Ed. 369; *Hibben* v. *Smith,* 191 U. S. 310, 24 Sup. Ct. 88, 48 L. Ed. 195; *City of Seattle* v. *Kelleher,* 195 U. S. 351, 25 Sup. Ct. 44, 49 L. Ed. 232. Appellant, as already stated, never appeared before that tribunal, and he has never sought through the courts any correction of this assessment, other than that proposed by this suit. If he had been so disposed he might by certiorari or by original action have procured review in the courts of the state of New York, and there raised the constitutional objections here insisted on. *Matter of New York,* 190 N. Y. 350, 83 N. E. 299, 16 L. R. A. (N. S.) 335, 13 Ann. Cas. 598. In our opinion, a property owner, who deems himself injured by an assess-

ment, and who has an opportunity of seeking correction before the tribunal pointed out in the assessment law, is under an obligation to appear there and urge his objections in order that the municipality may correct its proposed error. That waiver of the most lawful objections to a proposed assessment is possible has been pointed out in *Wight* v. *Davidson*, 181 U. S. 371, 21 Sup. Ct. 616, 45 L. Ed. 900; *Chadwick* v. *Kelley*, 187 U. S. 540, 23 Sup. Ct. 175, 47 L. Ed. 293." (See, also, *Farncomb* v. *City of Denver*, 252 U. S. 7;. *Matter of Common Council of Amsterdam*, 126 N. Y. 158; *County of Monroe* v. *City of Rochester*, 154 N. Y. 570; *Puget Sound Power & Light Co.* v. *County of Kings*, U. S. Sup. Ct., Feb. 18, 1924; *U. S.* v. *Tod*, 261 U. S. 626; *First Nat. Bank* v. *County Commissioners*, U. S. Sup. Ct., April 7, 1924.)

The Legislature in the " Second-Class Cities Law " (Cons. Laws, ch. 53), article 10, has provided a method for the review of assessments where lack of jurisdiction or fraud is claimed. Section 163 provides that no assessment shall be vacated or set aside by reason of any error, omission, irregularity or defect, not actually fraudulent. Section 164 provides that no action or proceeding to set aside an assessment shall be maintained except for total want of jurisdiction or for fraud. Section 165 furnishes the procedure for setting aside an assessment for such want of jurisdiction or for fraud, and states that no other method shall be adopted. Section 165 reads:

" No action or proceeding shall be maintained to set aside, vacate, cancel, annul, review, reduce or otherwise question, test or affect the legality or validity of any assessment or tax for a local improvement, except in the form and manner and by the proceedings herein provided. If in the proceedings relative to an assessment or tax, entire absence of jurisdiction on the part of the officers, board or body authorized by law to levy or assess the same or to order the improvement on account of which the

12

assessment was made or tax imposed, is alleged to have existed or in case any fraud or substantial error, other than the errors or irregularities specified in the preceding section, by reason of which substantial damages have been sustained, are alleged to have existed or to have been committed, any party aggrieved thereby, who shall have filed objections thereto within the time and in the manner specified by law therefor, may apply to the supreme court at any special term thereof, held within the judicial district in which the city is situated, for an order vacating or modifying such assessment as to the lands in which he has an interest, upon the grounds in said objections specified, and no other, and upon due· notice of such application to the corporation counsel.  Each such application shall be made within twenty days after the confirmation of the assessment.  Thereupon such court may proceed to hear the proofs and allegations of the parties and determine the same, or may appoint a referee to take the proof and report thereon, or to hear, try and determine the same.  * * *  No appeal shall be allowed or taken from the order made in any such proceeding, but the determination so made therein shall be final and conclusive upon all parties thereto."

The Legislature by this act gave to the plaintiff, respondent, here a full and complete remedy.  It knew of the proceedings before the assessors.  It had notice of the assessments, and an opportunity to be heard as to their correctness.  It could have filed objections as required in both notices given by the common council.  Within twenty days after the confirmation of the assessments it could have applied to the Supreme Court to set them aside.

What is there difficult or irregular about this proceeding?  Is it not just as effectual as proceeding by a summons and complaint?  The application under section 165 is heard by a Supreme Court justice.  The equity action may be heard by the same justice.  Fairness to

all taxpayers renders the statutory remedy the better of the two. It occasions a speedy hearing. The equity action, as in this case, may drag out for years. If the Supreme Court declares the assessment illegal for want of jurisdiction or for fraud, the amount of the assessment on the railroad company would be speedily re-assessed upon the other property. Awaiting an equity action some one has to go unpaid until the termination of the suit or the validity of municipal bonds may remain unsettled. I for one can see nothing whatever illegal or unconstitutional in the Legislature providing a short Statute of Limitations and a summary method of procedure in cases where the public are depending upon funds for public improvements, and the funds have to be raised by taxation. Taxation is not always just or equitable, but rather a rough and ready method of raising funds for carrying on government and municipal improvements. Public policy requires that the money shall be raised as speedily as possible and with certainty as to the person or property to pay the same.

The plaintiff having failed to proceed according to the requirements of this statute cannot now be heard to complain in a court of equity. It had its remedy, quick, efficacious and to the point. It preferred delay, and has lost its rights. Procrastination, and not unconstitutional methods, has deprived it of its property.

The judgments appealed from should be reversed and the complaints dismissed, with costs in all courts.

HISCOCK, Ch. J., CARDOZO, POUND, McLAUGHLIN, ANDREWS and LEHMAN, JJ., concur.

Judgments reversed, etc.