RICHARD J. SMITH et al., as Trustees of the Property of the New York, New Haven and Hartford Railroad Company, Respondents, *v.* CITY OF NEW YORK, Appellant.

First Department, May 28, 1968.

*Milton H. Harris* of counsel (*Stanley Buchsbaum* with him on the brief; *J. Lee Rankin, Corporation Counsel*), for appellant.

*William P. Jones* for respondents.

BASTOW, J. This appeal presents the issue of the respective liabilities of the parties to this action for an assessable improvement made pursuant to the provisions of chapter 12 of the New York City Charter adopted November 3, 1936, as amended, effective January 1, 1938. The present Charter adopted in 1961, effective January 1, 1963, made drastic changes (ch. 9) in the methods of authorizing and financing such improvements. The events with which we are concerned took place before the effective date of the latest Charter and section 300 thereof recognized the city's liability to pay for improvements lawfully authorized prior to January 1, 1962.

The judgment appealed from declares in substance that the city is liable for the assessment in question and that local improvement assessments totaling $333,953.07 made against

plaintiffs (herein "railroad") on October 16, 1962 by the Board of Assessors were null and void.

The assessments relate to the grading, curbing, paving and construction of a retaining wall on Garrison Avenue in the Borough of The Bronx. In 1954 and subsequent years the railroad owned lots abutting on that avenue in the area of the improvement for a distance of 1,025 feet with depths varying from 250 to 430 feet. In that year the Board of Estimate adopted a resolution granting preliminary authorization for this improvement. This action was taken upon the report of the board's Chief Engineer which stated, among other things, that " Since the railroad is exempt from this type of assessment, the cost of the wall and guard rail, as well as its pro-rata share of the cost of grading and paving and any curb and any sidewalk that may be laid, will be assessed against the City under Section 315 of the [Charter] " because " the Chairman of the Board of Assessors, in a communication dated July 1, 1953, states that the retaining wall and guard rail   *   *   *   are to be erected on the [avenue] where the street abuts the right-of-way of the [railroad]."

It appears — in the light of subsequent events — that this opinion of the Board of Assessors may have been based on an erroneous assumption or finding that the railroad property within the area of benefit was used exclusively for its right of way purposes. The basis for such an exemption has been stated as follows: " There is no statute which exempts the property of a railroad company from assessment for local improvement. Its yards, terminals or storage plants may be greatly enhanced in value by local improvements. It is only where the railroad's right-of-way is so used that it gives evidence of permanent user for railroad purposes that we have held that the railroad cannot be assessed." (*New York Cent. & Hudson Riv. R.R. Co.* v. *City of Yonkers,* 238 N. Y. 165, 173.)

The documentary evidence of the ensuing proceedings, including the final resolution of August 25, 1955 of the Board of Estimate, clearly shows proof before that board from which it could be concluded that the cost of the improvement was not to be assessed against the railroad. Specifically that resolution apportioned the cost of improvement by first placing one third of the cost of receiving basins on the city and 25% of the cost of grading and 22.7% of paving costs on the Borough of The Bronx. The resolution concluded that the remainder of the entire cost should be assessed " upon the property deemed to be benefited by the improvement as shown upon map dated July 1, 1953 and revised March 29, 1955." A portion of this map is found in

the record on appeal and appears to show all of the railroad's property abutting on Garrison Avenue to be occupied by its right of way.

Following completion of the improvement and in February, 1960 the cost thereof was certified to the Board of Assessors. Thereafter that board conducted a further investigation and determined — contrary to its earlier opinion — that a portion of the railroad's abutting property was not being used as a right of way but for a freight yard and, as such, derived benefit from the improvement. The total cost of the project was approximately $472,000. The Board of Assessors after a public hearing — hereinafter described — assessed, as stated, the railroad a total of $333,953.07, of which amount some $292,000 was for the retaining wall and the balance was for fencing, grading, paving and installation of curbs and sidewalks.

A proper understanding of the issues presented requires a closer examination of the pertinent provisions of chapter 12 of the 1938 Charter. Section 300 thereof provides that the Board of Estimate may only authorize an assessable improvement after receiving the report of its Chief Engineer and the holding of a public hearing. Subdivision b of the section mandates that the resolution authorizing the improvement shall specify, among other things, the total estimated cost of the improvement and separately state the total estimated expenses thereof and the assessed valuation of the property deemed benefited. Crucial here is the further provision of subdivision c that " At the time of authorizing the improvement the board [of Estimate] shall determine and provide in the resolution that the cost thereof shall be apportioned between the property benefited by the improvement and one or more boroughs and/or the city, and, in accordance with rules to be adopted by it, in what proportions such apportionment shall be made."

Section 303 provides that " The apportionment of the cost of an assessable improvement as fixed and determined in the resolution authorizing such improvement shall be final and shall not be changed otherwise than by a three-fourths vote of the board of estimate." Section 306 states that upon final completion of such an improvement and following certification to the Board of Assessors it " shall, subject to the provisions of section three hundred three * * * apportion and assess the cost of such improvement upon the property benefited by such improvement as specified in the resolution of authorization, or upon such property and one or more boroughs and/or the city in such proportions as shall have been determined by the board of estimate ".

Lastly, section 315 provides that for the purpose of computing assessments upon property benefited by such an improvement, property, although exempt, shall be included in the assessment and the amount computed thereon shall be payable by the city.

The railroad contends — and so Special Term in substance held — that these statutory provisions vest in the Board of Estimate the sole and complete power to apportion the cost of the improvement between the property benefited and the city or borough or both; that the resolution of the Board of Estimate authorizing this improvement included a determination exempting the railroad from any part of the cost and placing it on the city.

The city, on the other hand, argues that such a construction mistakes the nature of the function vested in the Board of Estimate; that in this area of the law the word "apportionment" has two meanings. The first (given to the Board of Estimate) refers to a legislative division of the cost of an improvement between the municipality and the local area of benefit. The second (vested in the Board of Assessors) connotes a quasi-judicial determination of how the local area's share shall be distributed among individual parcels according to benefit (cf. 55 N. Y. Jur., Special Assessments, § 141).

We conclude for other substantial reasons that it is unnecessary at this time to pass on these issues. It is alleged in substance in the second cause of action in the complaint that the railroad was denied due process of law by the action of the Board of Assessors in making its final determination without having given plaintiffs legally sufficient notice thereof. As we have seen, this project from preliminary authorization to certification of cost following completion covered the period from 1954 to 1960. After receipt of such certification in the latter year the matter received the attention of the Board of Assessors for more than two years until assessment of the tax in October, 1962. In the light of the documentary evidence it may be fairly assumed, although there is no such direct proof, that during these eight years the railroad proceeded on the assumption that it had been exempted from any portion of the improvement cost. Plaintiffs assert that the first knowledge they had of the contrary determination came with the tax bills.

It appears that in September, 1962 there was published in the *City Record* a notice by the Board of Assessors of a public hearing to be held on October 16, 1962 at which the interested parties might object in writing to the proposed assessments. It is not controverted that such notice was given in conformity

with the then applicable provision (§ 309–1.0) of the Administrative Code. This enactment mandated that the Board of Assessors was required only to give notice by publication in the *City Record* for at least 10 successive days requesting persons who might be affected by the assessment to present their objections in writing within 30 days from the first day of publication. The notice was further required to specify a time and place when and where such objections would be heard. The notice was required only to " describe the limits within which it is proposed to lay such assessment ". There were no requirements that the property owners be described by name or that they be served personally or by mail.

The general principle is recognized that " a property owner, who deems himself injured by an assessment, and who has an opportunity of seeking correction before the tribunal pointed out in the assessment law, is under an obligation to appear there and urge his objections in order that the municipality may correct its proposed error " (*Moore* v. *City of Yonkers,* 235 F. 485, 492; *New York Cent. & Hudson Riv. R.R. Co.* v. *City of Yonkers,* 238 N. Y. 165, 176, 177, *supra*).

It is now established, however, that when the name of the property owner and his address are known to the taxing authority, notice solely by publication does not satisfy the due process clause of the Fourteenth Amendment of the Federal Constitution. (*Wisconsin Elec. Power Co.* v. *City of Milwaukee,* 352 U. S. 948, and 958, where the court remanded the case to the Supreme Court of Wisconsin for consideration in the light of *Walker* v. *City of Hutchinson,* 352 U. S. 112. On reconsideration [275 Wis. 121, 123] the State court held " that the constructive notice given by the defendant city by publication of the proposed special assessments against the plaintiff's lands did not meet the requirements of due process " citing *Walker* v. *City of Hutchinson, supra,* and *Mullane* v. *Central Hanover Bank & Trust Co.,* 339 U. S. 306.)

We are constrained by these decisions and upon the facts here presented to hold that plaintiffs were denied due process by the constructive notice given them of the proposed assessments. The city has suggested that, if we should so conclude, the matter should be remanded " to the appropriate agency of the City." We decide, however, in the light of the heretofore discussed issue, to modify the judgment to provide that our affirmance thereof is without prejudice to such further proceedings by the Board of Estimate or Board of Assessors, or both, as may be lawful, proper and advisable in the premises. We decide no other issue.

The order and judgment should be so modified, on the law, on the facts and in the ·exercise of discretion, and, as modified, affirmed, without costs or disbursements to either party.

EAGER, J. P., STEUER, CAPOZZOLI and McGIVERN, JJ., concur.

Order and judgment unanimously modified, on the law, on the facts and in the exercise of discretion, to the extent of providing that the affirmance of the order and judgment herein is without prejudice to such further proceedings by the Board of Estimate or Board of Assessors, or both, as may be lawful, proper and advisable in the premises, and, as so modified, affirmed, without costs or disbursements to either party.