In the Matter of The **NEW YORK, NEW HAVEN AND HARTFORD RAIL-ROAD COMPANY,** Debtor.

**Richard Joyce SMITH,** Trustee of the property of the New York, New Haven and Hartford Railroad Company, Petitioner,

v.

**The CITY OF NEW YORK,** Respondent.

No. 30226.

United States District Court,
D. Connecticut.

Aug. 19, 1970.

See also D.C., 334 F.Supp. 576.

Lawrence W. Iannotti, New Haven, Conn., First Mortgage Indenture Trustee.

Robert H. Quinor, Com. of Mass., Boston, Mass., for Com. of Mass.

Joseph Schreiber, Dewey, Ballantine, Bushby, Palmer & Wood, New York City, for Chase Manhattan Bank.

William O. Nelson, Special Asst. Atty. Gen., U. S. Dept. of Justice, Washington, D. C., for the United States.

Walter A. Kernan, Carter, Ledyard & Milburn, New York City, for United States Trust Co. of N. Y.

Lester C. Migdal, Migdal, Low, Tenney & Glass, New York City, Lander, Greenfield & Krick, New Haven, Conn., for Harry Rebell and Lester W. Rubin, as New York, New Haven and Hartford R. Co. First Mortgage 4% Bondholders Committee.

Mulholland, Hickey & Lyman, William J. Hickey, Washington, D. C., for Railway Labor Executives' Assn.

Louis J. Lefkowitz, Atty. Gen., Albany, N. Y., for State of N. Y.

Frank J. Fazzano, Director of Business Regulation, State of R. I., Providence, R. I., for State of R. I.

Myron S. Isaacs, Hellerstein, Rosier & Rembar, New York City, for Oscar Gruss & Son.

Robert K. Killian, Atty. Gen., Samuel Kanell, Sp. Asst. Atty. Gen., Hartford, Conn., for State of Conn.

Jerome H. Shapiro, Atty. Gen., New York City, Basil Cole, Vice Pres.-Law, Philadelphia, Pa., for Penn Central Co.

Leonard S. Goodman, Fritz Kahn, Washington, D. C., for I. C. C.

Robert W. Blanchette, Philadelphia, Pa., for Trustees, Penn Central Co.

Richard R. Bongartz, Edwin K. Taylor, Philadelphia, Pa., for Penn Central Transportation Co.

Joseph Auerbach, John N. Worcester, Sullivan & Worcester, Boston, Mass., Simpson, Thacher & Bartlett, New York City, for Manufacturers Hanover Trust Co.

Whitney North Seymour, Jr., U. S. Atty., New York City, for the United States.

Carl E. Newton, M. Lauck Walton, Granville Whittlesey, Donovan, Leisure, Newton & Irvine, New York City, for N. Y., N. H. & Hartford Railroad Co.

Stephen A. Weiner, Winthrop, Stimson, Putnam & Roberts, New York City, for Irving Trust Co.

Mercer D. Tate, Spencer Ervin, Jr., Tate & Erwin, Philadelphia, Pa., for Richard Joyce Smith, New Haven, Conn., Trustee of New York, New Haven & Hartford Railroad Co.

James Garfield, Choate, Hall & Stewart, Boston, Mass., Thomas E. Fagan, Sp. Counsel, New York City, John B. Garrity, Sp. Counsel, Poughkeepsie, N. Y., DiSesa & Evans, Professor James William Moore, Pouzzner & Hadden, New Haven, Conn., Speiser, Shumate, Geoghan, Krause & Rheingold, New York City, for Trustee of New York, New Haven & Hartford Railroad Co.

Joseph R. Di Stefano, East Providence, R. I., for Providence & Worcester Co.

R. A. Byrne, A. Frederick Keuthen, Madison, N. J., for Manufacturers Hanover Trust Co., New York City.

## MEMORANDUM OF DECISION

ANDERSON, Circuit Judge (sitting by designation).

The respondent, The City of New York, in 1962 sought to assess the Debtor, the New Haven Railroad, for an alleged "benefit" for improvement of a city street which bordered the Railroad's right-of-way. The work on which this claim for an "improvement assessment" was based, was commenced in 1952 and was completed in 1958. The history of the subsequent administrative proceedings and those in the Supreme Court of New York are hereinafter set forth.

On November 20, 1969 the Trustee for the New Haven Railroad filed in this Court a petition for an adjudication of nonliability for reassessment and for an injunction and other relief. He also sought a temporary restraining order against the City.

## FINDINGS OF FACT

1. Due notice of the petition and request for temporary restraining order was given to the respondent in accordance with the order of notice of November 20, 1969. Through an agreement made by counsel for the petitioner and for the respondent and approved by this Court, the temporary restraining order issued by this Court on November 20, 1969 was extended to the date upon which this Court renders its determination of the matter. The respondent filed an answer. Briefs were submitted by the parties; and the matter came on for final argument and hearing on April 15, 1970.

2. On July 7, 1961, The New York, New Haven and Hartford Railroad Company (sometimes referred to as "Debtor" or "Railroad") filed its voluntary petition for reorganization with this Court, pursuant to Section 77 of the Bankruptcy Act, and this Court duly approved said petition on the same date; and the Debtor ever since has been and now is subject to the jurisdiction of this Court pursuant to Section 77 of the Bankruptcy Act.

3. The petitioner Richard Joyce Smith is the duly appointed, qualified and acting sole Trustee of the Debtor.

4. This Court by its Order No. 51, dated December 6, 1961, caused notice to be given to creditors requiring them, subject to some exceptions not here pertinent, to file claims on or before April 6, 1962. By subsequent orders the time for filing was extended; and notice thereof was duly given to creditors in accordance with the Court's orders. The last extended time terminated on September 15, 1966.

5. The City of New York filed timely claims for certain matters, but it did not within the aforesaid time, nor at any time since, file a claim for the so-called "Assessable Improvement".

6. This Court by its order directing inclusion of the Debtor in Penn Central Company,[1] Order No. 559, entered December 24, 1968, provided that "The conveyance of the Debtor's assets to Penn Central Company pursuant to the plan shall be a binding transfer to Penn Central Company free and clear of all liens, charges and encumbrances thereon" subject to certain exceptions not here pertinent. (Penn Central Company is now by change of name the Penn Central Transportation Company.)

7. This Court by its order of July 28, 1969, approved certain provisions of the plan which the Interstate Commerce Commission had theretofore certified to this Court, among other things that claims of State and local authorities for taxes and related charges applicable to the period prior to July 7, 1961 would take under the plan as therein provided for, if the claims were secured; but in the event that any such claim was unsecured it would take nothing.

8. The present controversy springs from the following circumstances. In 1952 the City of New York commenced a so-called "Assessable Improvement" proceeding pursuant to Chapter 12 of the City Charter as it was then in effect. The improvement consisted of paving Garrison Avenue to its mapped width between Leggett and Longwood Avenues in the Borough of Bronx where Garrison Avenue bordered the right-of-way of The New York, New Haven and Hartford Railroad Company. In addition to the usual items in street widening this project included the construction of a costly retaining wall and guard rail to separate the grade of the street from the grade of the Railroad's right-of-way.

9. Pursuant to the provisions of said Chapter 12 of the Charter the proceeding in due course came before the Board of Estimate of the City of New York for public hearings. At the first such public hearing held June 11, 1954, to consider preliminary authorization for the improvement a ruling of the Board of As-

1. On June 21, 1970 Penn Central Transportation Co. went into reorganization under § 77 of the Bankruptcy Act in the United States District Court for the Eastern District of Pennsylvania.

sessors of the City of New York was reported to the Board of Estimate by the Board of Estimate's Chief Engineer in the following language:

"However, the Chairman of the Board of Assessors, in a communication dated July 1, 1953, states that the retaining wall and guard rail, included in this project are to be erected on the northwesterly side of Garrison Avenue between Leggett Avenue and Longwood Avenue, where the street abuts the right-of-way of the New York, New Haven and Hartford Railroad. Since the railroad is exempt from this type of assessment the cost of the wall and guard rail, as well as its pro-rata share of the cost of grading and paving and any curb and sidewalk that may be laid, will be assessed upon the City under Section 315 of the New York City Charter."

At subsequent public hearings before the Board of Estimate the Railroad's exemption from assessment for the improvement was reiterated and incorporated in the successive resolutions of the Board of Estimate, including its final resolution of August 25, 1955 when the project was finally approved, and there is nothing in the record presented to this Court to indicate that the Railroad's exemption from assessment was ever challenged by anyone, including The City of New York, in those public hearings. On February 20, 1958 the work was accepted as complete; and on February 1, 1960 the Bronx Borough President certified the cost of the improvement to the Board of Assessors.

10. All of the aforesaid events occurred prior to the institution on July 7, 1961 of the pending reorganization proceedings.

11. By subsequent amendment to the City Charter assessable improvements have been abolished, except for those authorized by the Board of Estimate prior to January 1, 1962. The Board of Estimate had not prior to January 1, 1962 authorized any assessable improvement affecting the Debtor.

12. Subsequent, however, to the institution of the pending reorganization proceedings and more than seven years after the Board of Estimate had determined that the Railroad's right-of-way was not subject to any assessment in connection with the improvement, the Board of Assessors on October 16, 1962, assessed $333,953.07, by far the greater part of the total cost of the project which amounted to $471,841.52, against the abutting Railroad's right-of-way contrary to the determination of the Board of Estimate and the provisions of said Chapter 12 of the Charter applicable to the case. Bills, also dated October 16, 1962, were issued for "Local Improvement Assessment" against the Debtor, and the assessment on the same date became an apparent lien against the Debtor's right-of-way.

13. After exhausting their administrative remedies as afforded by said Chapter 12, the Trustees on July 6, 1965 commenced suit against The City of New York in the Supreme Court of New York, Bronx County, for a judgment declaring the assessment and resulting lien illegal, null and void. The complaint contained two separate causes of action. The first pleaded the illegality of the assessment as repugnant to the Railroad's exemption as determined by the Board of Estimate; the second pleaded the constitutional insufficiency of the notice of the assessment. Each party moved for summary judgment. Supreme Court Justice Vincent A. Lupiano denied the City's motion in all respects and granted the Trustees' motion in all respects as to each of their two causes of action; and entered judgment in the aforesaid action on February 27, 1967. As to the Trustees' first cause of action this judgment decreed:

"1. That the valid and duly constituted resolution of the Board of Estimate of the City of New York passed on or about August 25, 1955, determined and directed that no part of the cost of the improvement in Garrison Avenue between Leggett and Longwood Avenues as described in the com-

plaint and motion papers in this action should be assessed against plaintiffs' abutting railroad right-of-way.

2. That the action of the Board of Assessors of the City of New York in assessing any part of the cost of the improvement as described in this action against plaintiffs' abutting railroad right-of-way was contrary to the mandate of the Board of Estimate contained in its said resolution of August 25, 1955.

3. That said action of the Board of Assessors was without jurisdiction, contrary to law in such cases provided, illegal and void.

4. That said action of the Board of Assessors deprived plaintiffs of their property without due process of law in violation of their rights under the Constitution of the United States and the Constitution of the State of New York."

And as to the second cause of action the judgment decreed:

"5. That the Board of Assessors failed to give plaintiffs legally sufficient notice of the assessment described in this action depriving plaintiffs of their property without due process of law in violation of their rights under the Constitution of the United States and the Constitution of the State of New York."

14. The City of New York appealed to the Appellate Division, First Department, from each and every part of Justice Lupiano's order and judgment. That court decided the appeal by its order of May 28, 1968, which provided in pertinent part:

"It is unanimously ordered that the order and judgment so appealed from be and the same is hereby modified, on the law, on the facts and in the exercise of discretion, to the extent of providing that the affirmance of the order and judgment herein is without prejudice to such further proceedings by the Board of Estimate or Board of Assessors or both, as may be lawful, proper and advisable in the premises,

and, as so modified, affirmed, without costs or disbursements to either party."

In the Appellate Division's opinion (30 A.D.2d 122, 290 N.Y.S.2d 306) that court stated:

"The documentary evidence of the ensuing proceedings, including the final resolution of August 25, 1955 of the Board of Estimate clearly shows proof before that Board from which it could be concluded that the cost of the improvement was not to be assessed against the railroad."

The Appellate Division said further:

"We conclude for other substantial reasons that it is unnecessary at this time to pass on these issues."

and further:

"We decide, however in the light of the heretofore discussed issue, to modify the judgment to provide that our affirmance thereof is without prejudice to such further proceedings by the Board of Estimate or Board of Assessors, or both, as may be lawful, proper and advisable in the premises. We decide no other issue."

15. The Trustees appealed to the Court of Appeals from that part only of the Appellate Division's order which modified the order and judgment of the trial court. Four days after the Trustees' appeal the City served notice of reassessment, but this was stayed by stipulation. By its order dated March 6, 1969, the Court of Appeals affirmed the Appellate Division's order of May 28, 1968, unanimously without opinion. 24 N.Y. 2d 782, 300 N.Y.S.2d 572, 248 N.E.2d 432.

16. On March 14, 1969, the City informed the petitioner that it intended to press for re-assessment. On March 18, 1969, the petitioner commenced an action against the respondent in the Supreme Court of New York, Bronx County, for an injunction permanently restraining it from re-assessment in the premises, and moved at the same time for a preliminary injunction. Petitioner's motion was denied, as was the City's motion to

dismiss the complaint by orders of Amsterdam, J., entered April 25, 1969.

17. Justice Amsterdam did not disturb petitioner's exemption from assessment as previously adjudicated in its favor by Justice Lupiano, but denied the preliminary injunction on discretionary grounds.

18. The respondent City then again on May 7, 1969 served notice of re-assessment. The petitioner appealed to the Appellate Division on May 14, 1969 from the order denying its motion for preliminary injunction, and immediately applied to the Appellate Division for a stay of assessment which was granted. On October 23, 1969 the Appellate Division unanimously affirmed without opinion the order denying the Trustee's preliminary injunction.

19. At the present time the administrative determination of the Board of Estimate that the Railroad is exempt from any improvement assessment is still in effect.

20. At the present time Justice Lupiano's order adjudging that the petitioner is not subject to the improvement assessment is still in effect.

21. At the present time there is no re-assessment nor lien against the Railroad or its former right-of-way nor was there at any time prior to or since July 7, 1961.

22. Under date of November 6, 1969 the Bureau of Assessors sent a mailed notice to the Debtor "that a hearing on re-assessment of Railroad Property will be held on Tuesday, November 25, 1969 at 11 a. m. in Room 936, Municipal Building, Manhattan". This Court on November 20, 1969 temporarily restrained said re-assessment hearing, and the matter of petitioner's non-liability for re-assessment and for injunctive relief came on for hearing as set forth in paragraph 1, *supra*.

## CONCLUSIONS OF LAW

1. This Court has summary jurisdiction to adjudge the issues raised by the petition and answer.

2. Petitioner's action for a permanent injunction pending in the New York Supreme Court for Bronx County is no bar to the exercise of this Court's summary jurisdiction in that said state court is not concerned in that action with the protection of this Court's orders in this proceeding or with the protection and implementation of the provisions of the plan of reorganization approved by this Court.

3. Whatever claim the City may have had against the Debtor accrued prior to July 7, 1961 when the reorganization proceedings were instituted.

4. The City is guilty of laches in failing to assert any claim for the so-called "Assessable Improvement" until October 16, 1962, which was more than seven years after the Board of Estimate's final determination of exemption (August 25, 1955), more that four years after the work was accepted as complete (February 20, 1958), more than two years after the Bronx Borough President certified the cost of the improvement to the Board of Assessors (February 1, 1960), and more than a year after the institution of the reorganization proceedings on July 7, 1961.

5. The rights of the City, in this reorganization, vis-a-vis creditors and the Trustee of the Debtor are determinable as of July 7, 1961.

6. Inasmuch as the City of New York has never filed a claim for the so-called "Assessable Improvement", and the time having long ago expired for filing if it wanted to assert such a claim, the City is barred from now asserting any such claim in this reorganization proceeding by the terms of Order No. 51, as extended.

7. On July 7, 1961 the City did not have an allowable claim, either secured or unsecured, against the Debtor growing out of the so-called "Assessable Improvement"; or, alternatively, if the City had any claim at that time it was unsecured.

8. Thus the assessment by the Board of Assessors on October 16, 1962 was invalid under reorganization law.

9. The aforesaid assessment was also held "illegal and void" under New York law by judgment of the Supreme Court of New York, Bronx County, Vincent A. Lupiano, J., entered on February 27, 1967, and, further, because it rested on insufficient notice.

10. The Board of Estimate administratively determined that the Railroad was exempt from any assessment for the improvement in question.

11. That determination was judicially confirmed by the New York Supreme Court's judgment of February 27, 1967.

12. The Appellate Division of New York in its order of May 28, 1968 did not pass upon the Trustees' first cause of action, but left standing the Railroad's exemption from assessment as adjudicated by the Supreme Court.

13. It permitted only such further proceedings by the Board of Estimate or Board of Assessors, or both, "as may be lawful, proper and advisable in the premises."

■ 14. Any attempt now by the respondent to create a liability of the Debtor would impair the provisions of the plan of reorganization which this Court has approved.

15. Any attempt to impose an assessment with an attendant lien upon property of the Penn Central Transportation Company (formerly Penn Central Company) for the alleged local improvement would constitute a violation of this Court's Order No. 559. Alternatively, if the petitioner were obliged to hold Penn Central harmless as to any lien or charge now placed upon the property transferred by the Debtor to Penn Central such an imposed liability upon the petitioner would impair the provisions of this Court's order of July 28, 1969 concerning tax and related charges of State and local authorities.

16. Whatever claim, if any, The City of New York has against the Debtor's estate is unsecured and valueless under the provisions of the plan of reorganization of the Debtor approved by this Court by its Order of July 28, 1969.

17. The City of New York should be permanently enjoined from levying any assessment or asserting any claim or lien against the Debtor or the Penn Central Transportation Company arising out of the so-called "Assessable Improvement."

### DISCUSSION

The respondent City asserts it has a tax claim against real property of the New Haven Railroad, which is not now due but which, when, as and if it does become due, will be secured by certain real property of the Railroad. The street repairs, out of which the alleged benefit arose which gave rise to the tax claim, were completed February 20, 1958 and the cost of the project was certified to the Board of Assessors February 1, 1960. The New Haven Railroad went into reorganization July 7, 1961.

■ Although the time limited for creditors to file their proofs of claim, including certain extensions, ran until September 15, 1966, at no time did the City of New York file a claim for the so-called "Local Improvement Assessment" or seek to intervene to assert a lien upon, or security in, real property in the hands of the Trustee. The City argues that from and after October 16, 1968 and during the subsequent litigation in the State court, the Trustee of the Railroad had actual knowledge of the City's claim, but it is clear that even such actual knowledge by the Trustee in no way impairs the Trustee's position as a judgment creditor without knowledge or actual notice of the City's claimed unperfected lien, under § 70c of the Act. By contesting the validity of the City's claim in the State courts the Trustee did not waive, nor indeed could he waive, the exclusive jurisdiction of the Reorganization Court to adjudicate the claimed lien or security right of the City in real property in the hands of the Trustee.

■ The City relies on § 67(b) of the Act (11 U.S.C.A. § 107(b)), as amended in 1966, as the source of its

claimed right to perfect its tax lien after the Railroad was in reorganization. There is no doubt that this section applies to railroad reorganization under § 77. Lyford v. State of New York, 140 F.2d 840, 845 (2 Cir. 1944). It has to do, however, with tax debts, which have arisen *before* the date of bankruptcy, for which a securing lien cannot be perfected until after bankruptcy. In the present case, the City contends "it had no claim against the Railroad prior to the institution of reorganization proceedings," i. e. July 7, 1961, and nothing was then due. If that is so, the City's reliance on § 67(b) is futile.

On the other hand, if prior to July 7, 1961 there was a tax obligation owed by the Railroad to the City, it was completely barred by this court's order of June 29, 1966, which read as follows:

"The 15th day of September, 1966, is hereby fixed as the time within which taxing authorities shall file either original or amended proofs of claim, after which date no claim not so filed or amended may participate, for pre-reorganization taxes due and unpaid prior to July 7, 1961."

The City never complied with the order.

If, as the City asserts, there was no such tax obligation due at the date of reorganization, then it implies it was a debt incurred by the Trustees or the Trustee; it even hints that it should be treated as an administration expense. There is nothing in the record to justify any such findings.

The City also takes the position that this Court waived its jurisdiction not only over the nature and amount of the claim asserted by the City but also over the status and priority of the City's claim in a plan of reorganization and, in effect, afforded the City's claim an immunity from all orders and decrees of the Court in the New Haven Reorganization. This, of course, the Court never did. The leave to bring a declaratory action in the New York state courts was confined to a determination of the validity of the City's assessment of benefits. This was adjudicated in favor of the Trustee and affirmed by the Appellate Division and Court of Appeals. The reviewing courts were apparently persuaded that the City had not developed or presented certain additional facts not brought out on the trial. They did not, however, remand or order a new trial, but said their affirmance was "without prejudice to such further proceedings by the Board of Estimate or Board of Assessors, or both, as may be lawful, proper and advisable in the premises." The City has construed this to empower it to start the administrative proceedings all over again.

It is now 12 years since the so-called "assessable improvement" or benefit was furnished. It is over nine years since the New Haven went into reorganization. Even now the City asserts there is no debt presently due from the Railroad or Trustee of the Railroad in reorganization and no lien on any of its property, but it goes on to declare that it has the right at any time in the indefinite future, after appropriate action by the City's boards, to pronounce a debt of around $350,000 to be due the City from the Bankruptcy Estate and *ipso facto*, acquire lien rights on certain real estate now in the name of the Penn Central Transportation Co.

Any such action would seriously frustrate and impair the decree of this Court ordering the good faith conveyance of the real estate, claimed to be later subject to lien, from the Debtor's estate to the Penn Central "free and clear of all incumbrances" and the judgment of this Court approving the distribution portion of the Reorganization plan. If a municipality or other governmental entity were permitted to dredge up a prereorganization claim and assert a due date and lien right in property in the hands of the trustee, at any time in the indefinite future, the orderly process of administering a debtor's estate in reorganization under § 77 would become impossible. No reorganization plan could be formulated and adopted, and the entire bankruptcy proceeding would have to

wait upon the leisurely deliberations and tardy actions of state boards which, on the first round, consumed not only many months but years and formed the basis for the finding of laches, above mentioned. The position taken by the City would render completely nugatory § 57n that claims of the United States and of any State or subdivision thereof shall be proved and filed like claims of other creditors. Even before § 57n applied to governmental entities, the Court could issue a bar order requiring the proofs of claims to be filed before a specified date in order to expedite the administration of the estate. 3 Collier, Bankruptcy, Par. 57.30, p. 392 (14th ed. 1969). The City failed to comply with the limitation order of this court of June 29, 1966.

The City of New York is therefore barred from filing any claim, based upon said "Assessable Improvement," against the Debtor's estate, or against the Penn Central Transportation Co., and from asserting any lien on property formerly in the name of the Debtor, now in the name of Penn Central Transportation Co., and it is also barred from participating in any distribution of assets under the Debtor's reorganization plan; and it is hereby permanently enjoined from doing any of those things.